## FELTON v. GIRARDY.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1900.)

### No. 787.

1. MASTER AND SERVANT—ASSUMED RISKS—DUTY TO INSTRUCT INEXPERIENCED SERVANT.

A servant impliedly assumes the risks incident to the service he contracts to perform, and, in the absence of knowledge to the contrary, the employer may assume, as between them, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty; but if the employment be dangerous, as known to the master, who has also reason to know that the servant, from his youth, feebleness, incapacity, or inexperience, does not appreciate the dangers, the servant cannot, even with his own consent, be required to assume the risk therefrom, unless he is cautioned and instructed sufficiently to enable him to comprehend them, and to do the work safely, with proper care on his own part; and the same rule applies where a servant is directed to do a temporary work outside of his regular employment, the danger from which is not obvious.

2. SAME—ACTION FOR DEATH OF SERVANT—EVIDENCE OF ASSUMPTION OF RISK.

Plaintiff's intestate was employed as a boiler maker's helper in the repair shops of defendant railroad company. During a holiday, when most

of the other employés were absent, he was directed by the foreman of the shops to go into the fire box of a locomotive engine, which had steam up, and tighten the plug in a leaking flue of the boiler. The plug was a screw plug, and in attempting to drive it with a hammer he broke the threads so that the plug was forced out by the pressure, and he was scalded to death by the escaping steam and water. It was shown that two kinds of plugs were used in leaky flues, one being screwed into the flue, and the other driven; but it did not appear that deceased knew such fact, and there was evidence tending to show that the repairing of such plugs was the work of an experienced boiler maker, who could have told which kind the one to be repaired was, and that it should have been tightened with a wrench. There was also testimony that deceased objected to doing the work while the boiler was hot, saying he did not know what to do, or how to do it, but that he was ordered back without instructions. *Held,* that on such evidence a motion to direct a verdict for defendant was properly overruled.

3. SAME—REPRESENTATION OF COMPETENCY.

A statement by one applying for work in the boiler maker's department of railroad repair shops that he "had had experience in that kind of work," where he was employed only as a helper, did not justify the foreman in requiring him to do work which required the skill and knowledge of an experienced boiler maker to do with safety to himself, without giving him proper instructions, and he cannot be held, as matter of law, to have assumed the risk in doing such work.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action by administratrix of Charles Beckert for the negligent death of the intestate while in the service of the plaintiff in error. Judgment for the plaintiff below, and defendant sued out writ of error. Charles Beckert was employed in the repair shops of the railroad company. A locomotive engine was reported as having a leaky plug. By order of one James E. Feeney, who was general foreman of the roundhouse and repair shop, Beckert was directed to go into the fire box and remedy the leak. Though the fire had been drawn from the fire box, it was still very warm, and the steam gauge showed a pressure of 16 pounds inside the boiler. Beckert undertook to stop the leak by driving the flue plug tighter, using a hammer for the purpose. The leaky plug was a screw plug. Hammering upon it for the purpose of driving it tighter broke or crushed the threads which held it in place to such an extent that it was driven out by the steam pressure in the flue, and Beckert and his helper were scalded to death by the escaping steam and hot water. The evidence established that leaky boiler flues are often plugged to prevent escape of steam and water into the fire box. Sometimes the end of such a flue is threaded, and a brass screw plug then screwed tightly in, so as to fill and close the end of the flue. But another and common method was to close the flue by driving a tapering iron plug, adapted to the size of the flue, into the open ends, thus closing it. Both methods were then in use in the engines of the plaintiff in error. When such a flue plug leaks it is first necessary to determine whether it is a screw or driven plug. If a screw plug, the leak is often stopped, if the plug was not defective, by tightening it up with a wrench. A driven plug is ordinarily tightened by driving it in with the hammer. An experienced mechanic can readily tell from the metal and from the appearance of the exposed end of such a plug whether it is of the one kind or the other, and whether it should be tightened with a wrench or hammer. But the appearance of the exposed ends of such plugs in the fire box is likely to be much affected by the smoke and flames to which they are exposed; but in such case it is shown that an experienced mechanic can determine the metal of the plug by the sound when tapped with a hammer, and thereby know whether it is a screw plug or driven plug. To drive a screw plug in with a hammer is manifestly dangerous, as the threads are liable to be crushed, and, if there is steam in the boiler, it is quite liable to be blown out. This was just what occurred in the case of Beckert. For some reason he used

a hammer instead of a wrench, and undertook to tighten a screw plug by driving it in. The threads were thereby crushed, the plug driven out, and he lost his life as a result of doing the work in a wrong way.

Charles R. Head, for plaintiff in error.

Wm. T. Murray, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The theory upon which the plaintiff's suit was predicated, as set out in the third count of the declaration, was that the deceased was inexperienced in the repairing he was set to do; that he was only a boiler maker's helper, and that the work he was ordered to do was the proper work of an experienced boiler maker, and required a degree of skill and knowledge which deceased did not have; and that his inexperience in such work, and the great danger encountered in performing it, were known to Feeney, the foreman who directed him to do the work, and that he was not cautioned or instructed as he should have been. At the conclusion of all the evidence the defendant moved for a peremptory instruction. This was denied, and the case put to the jury upon the single question as to whether the defendant had been negligent in requiring the deceased to do the job at which he met his death, under all the circumstances of the case.

There was no error in refusing to instruct the jury to find for the plaintiff in error. There was evidence from which the jury might reasonably infer that Beckert was only a boiler maker's helper, and that the work he was ordered to do was boiler maker's work, and not within the scope of the skill and experience of a mere boiler maker's helper. There was also evidence to show that deceased had had little or no experience in doing or assisting in any such job, and that it was a more dangerous work than anything within his experience, and required a degree of skill and caution which he had had no occasion or opportunity to acquire. The day was a holiday, and the skilled boiler makers were off duty, which in part accounts for the order directing the deceased to do this emergency work. It was also in evidence that after Beckert went into the fire box he came out, and asked the foreman, Feeney, if he could not let the engine cool down a little, saying it was too hot in there to work. To this, the witness Fonda says, Feeney, with an oath, replied: "Go back in there. It won't take you two minutes. We can't keep the engine out of service twelve hours to cool her down." Fonda then says that deceased said: "Well, I don't know what to do in there, and I don't know how to do it." To this, witness says, Feeney replied, "Go back in there and tighten up the plug; it won't take you two minutes;" and gave him a shove. The account given of the matter by Feeney wears a more pleasant face, but the question of credibility was for the jury. If Fonda's evidence was credited, the jury could well infer that Beckert objected to this work upon the ground that he did not have the skill and judgment requisite to its proper performance, and thus gave notice to his superior of his inexperience and disqualification.

A servant impliedly assumes the risks and hazards incident to the

service he contracts to render, and, in the absence of knowledge to the contrary, an employer may assume, as between the master and the servant, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty. But if the employment be one of a dangerous character, requiring skill and caution for its proper discharge with safety to the servant, and the master be aware of the dangers, and have reason to know that the servant is unaware of them, and that from his youthfulness, feebleness, incapacity, or inexperience does not appreciate them, the servant cannot, even with his own consent, be exposed to such dangers, unless he be cautioned and instructed sufficiently to enable him to comprehend them, and, with proper care on his own part, do his work safely. Railroad Co. v. Miller (decided at this term) 104 Fed. 124; Reynolds v. Railroad Co., 64 Vt. 66, 24 Atl. 134; Shear. & R. Neg. (5th Ed.) 219a; Brennan v. Gordon, 118 N. Y. 489, 23 N. E. 810, 8 L. R. A. 818; Sullivan v. Manufacturing Co., 113 Mass. 399; O'Connor v. Adams, 120 Mass. 427; Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115; Whitelaw v. Railroad Co., 16 Lea, 391, 1 S. W. 37; Railway Co. v. Frawley, 110 Ind. 18, 9 N. E. 594; Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84; Hughes v. Railway Co., 79 Wis. 264, 48 N. W. 259; Railway Co. v. Brick, 83 Tex. 598, 20 S. W. 511; Railroad Co. v. Price, 72 Miss. 862, 18 South. 415.

The rule is not materially different in principle when a servant is directed to do a temporary work outside of the work which he has engaged to do. If there is nothing peculiarly dangerous in the new work, and the master has no reasonable ground for believing that the servant is unaware of the dangers he will encounter, or has not the requisite skill and experience to do the work with safety to himself, the servant may well be regarded, if he obey, with having assumed the usual and ordinary risks incident to the employment. Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84; Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115; Railroad Co. v. Fort, 17 Wall. 553, 21 L. Ed. 739. In the case last cited the defendant's liability was rested upon the apparent youthfulness and inexperience of the lad injured, which was held by the court to be so evident as to prevent his assent to the order from operating as an assumption of the risks incurred.

But when a servant is ordered by one having authority over him to do a temporary work beyond the work which he had engaged to do, and the superior knows, or ought to know, from all the circumstances of the case, that the work which the subordinate is directed to do is of a peculiarly dangerous character, and is aware, or under all the circumstances should be aware, that the risks and hazards of the work, or the proper mode of doing the work to avoid the incident risks, are not obvious or known and appreciated by the subordinate, by reason of his youth, incapacity, or inexperience, it is the duty of the superior to caution and instruct such disqualified servant sufficiently to enable him to understand the dangers he will encounter, and how to do the work with safety if he exercise due care himself. Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115; Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84.

The duty of qualifying the servant in such a situation depends upon the circumstances, as is also the case in an original employment, where the direction is to do a work within the legitimate scope of the original contract of service. The principle is that if an employer knows that the servant will be exposed to risks and dangers in any labor to which he assigns him, and is aware that the servant is from any cause disqualified to know, appreciate, and avoid such dangers, the dangers not being obvious, the master is guilty of a breach of duty, unless he gives such reasonable cautions and instructions as should reasonably enable the servant, exercising due care, to do the work with safety to himself.

In determining the question of obviousness, every reasonable inference must be drawn in favor of the party against whom a peremptory instruction is asked. In view of this principle, we are not prepared to say that the dangers incident to the work which Beckert was called upon to do, and the proper mode of encountering them, were sufficiently obvious to justify the court in taking the case from the jury. If he had never repaired such a leak, or worked in a situation so confining and uncomfortable as the hot fire box of an engine whose boiler was full of steam; if he, from inexperience, supposed such boiler flues to be always plugged with the driven plug, or, in the heat and discomfort of his place for working, mistook, from inexperience, a screw plug for a driven plug,—we are not prepared to say that the master is relieved from responsibility, even though very slight knowledge of this particular kind of repairing might have enabled this servant to have done this work in safety, using due care.

There was evidence tending to show that the deceased applied for employment in the "boiler maker's department" of the railroad company's shops at Chattanooga, and that he represented that he "had had experience in that kind of work," and that he was thereupon employed either as a boiler maker or boiler maker's helper. In view of this evidence, a number of special requests were presented, which, in substance, sought to induce a charge that, if such representations were made, this absolved the plaintiff in error from any duty of cautioning or instructing the deceased concerning any of the duties coming within the scope of an employé in the boiler-repairing department of the Chattanooga shops. The court gave these requests, after modifying them so as to apply only if the jury should find that the deceased was employed as a boiler maker. The court also instructed the jury, in meaning and effect, that if deceased was not employed as a boiler maker, but only as a helper, and was put to the proper work of a helper, such representations, if made, would be only a circumstance to which the jury might look in determining how far Feeney was aware of the qualifications of deceased for safely performing the work he set him to do on the occasion of Beckert's death.

The fifth, sixth, and seventh assignments of error cover the supposed error of the court in modifying these requests, so that such representations should not be conclusive, but only a circumstance, in case Beckert's employment was that of a helper only. A prime objection to all these special requests was that they singled out a part

only of the evidence, and attempted to have the case turn upon that part. The alleged representations of Beckert were not specific. If he said what is claimed he said to the witness Chadwell, it was a general representation of familiarity with the work of the boiler maker's department. This department covered a wide range. The distinction between the knowledge of a mere apprentice, or of a helper, and that of a boiler maker, was very wide, and all that was said to Chadwell might be said by one who had had some experience as an apprentice or helper in such a department. There was also evidence that whatever his representations to Chadwell, and assuming that Chadwell repeated all he said to the master mechanic who employed him, he was employed originally in firing an engine. After that, and but about eight months before his death, he was put in the boiler makers' department. Whether he was then employed as a boiler maker or a mere helper was a matter of some dispute, though there was much evidence tending to show that, whatever his nominal employment, he was in fact but a helper, getting a helper's pay, and doing only helper's work. There was also evidence that the repairing of the plugs of a leaky flue was boiler maker's work, requiring a degree of skill and experience only acquired after long service as a helper. There was also evidence that when ordered to do this work he declared that he "did not know what to do or how to do it." Undoubtedly, an employer, in the absence of other evidence, would be justified in assuming that one who represented himself as competent for a particular line of work did not need cautioning and instructing in that line. But if an employer know that a servant, to whom he assigns a particular work involving peculiar dangers, and requiring experience and skill to avoid the danger which he knows the servant will encounter, has not had the experience necessary to enable him to comprehend and avoid such dangers, he cannot absolve himself from the duty of cautioning and instructing such servant, although the servant represent himself as altogether qualified. It is the knowledge of the master of the inexperience and disqualification of the servant of dangers known to the master which fastens upon the latter the duty of taking reasonable care that the servant shall not sustain an injury through such known inexperience. This was the view of this question which we took in the case of Railroad Co. v. Miller (decided at this term) 104 Fed. 124.

The plaintiff in error has no reason to complain of the action of the court upon its special requests, taken as a whole, so far as they relate to the general question of the effect of the representations alleged, to have been made by Beckert when he originally sought service. Whatever they were, they were not an estoppel; for, if the master learned that he was not qualified to safely do the dangerous work he was ordered to do, it was his duty to give him reasonable cautions and necessary instruction to enable him to do safely the work he undertook. No error is assigned for which the cause should be reversed, and the judgment is accordingly affirmed.