## WESTERN UNION TEL. CO. v. BURGESS.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1901.)

No. 835.

1. APPEAL—REVIEW—RULINGS ON ADMISSION OR REJECTION OF EVIDENCE.

Rulings of a trial court admitting or rejecting evidence are not reviewable on writ of error unless the objections made specifically stated the ground of objection.

2. MASTER AND SERVANT—FELLOW SERVANTS—NEGLIGENCE FOR WHICH MASTER IS LIABLE.

Although a foreman may be a fellow servant with one working under his orders for general purposes, for whose negligence resulting in injury to his subordinate the master is not liable, yet when such negligence is in the failure to discharge a positive duty which the master owes to the servant, and which cannot be delegated, the rule of nonliability is not applicable, and his negligence is that of the master, who is responsible for its consequences.

3. SAME—INJURY OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff, employed as a lineman by defendant telegraph company, was directed by his foreman to climb a pole and saw it off some 40 feet from the ground. In doing the work he held to the pole with one hand above the place where he was sawing, and when the pole was partly sawed through it broke off, causing plaintiff to fall, and he received an injury. There was evidence tending to show that plaintiff was inexperienced, and was changed from work upon the ground, to which he was accustomed, to the work of cutting down the pole, without any warning as to the danger, or instruction as to the safest mode of doing the new work. *Held*, that upon such state of facts it could not be said as matter of law that he was guilty of contributory negligence in not inspecting the pole for himself to ascertain its soundness, or in the particular method adopted for sawing off the section, but that such question was one of fact for the jury.

4. SAME—ASSUMED RISKS—FAILURE TO INSTRUCT INEXPERIENCED SERVANT.

A servant cannot be held to have assumed a risk of the employment the danger from which, owing to his inexperience, which is known to the

master, he is incapable of understanding and appreciating, and as to which he is given no warning or instruction.[1]

5. FEDERAL COURTS—CONFORMITY TO STATE PRACTICE.

Rev. St. § 914, requiring the practice and procedure in the courts of the United States in actions at law to conform as nearly as may be to the state practice, does not make a provision of a state statute requiring the jury on its retirement to take with them the written instructions of the court controlling in a circuit court of the United States sitting within the state.[2]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This action was brought to recover damages for a personal injury sustained by the defendant in error while in the employ of the plaintiff in error as a lineman. Speaking generally, the work of a lineman consisted in stringing wires, putting up and taking down poles, digging holes, and the like. One of the methods of taking down and removing a telegraph pole was for a lineman to climb the pole, and saw it off in sections, beginning about four or five feet from the top, until the pole was cut sufficiently low to make it practicable to pull down the remainder of the pole and remove it. The defendant at the time of the injury had, pursuant to directions from his foreman, Shadd, climbed the pole, situated on a street in the city of Cleveland, Ohio, up to a distance of about 40 feet from the ground and about 5 feet from the top of the pole, the pole being about 7 inches in diameter, and was engaged in sawing off a section of the pole, supporting himself by placing his left leg around the pole, or "hugging" it with the left leg, and placing the climbing spur on the foot of the right leg in the pole. He was sawing with one hand and holding with the other just above the point at which the saw blade was cutting through the pole, and when the pole was sawed about three-fourths of the way through the top section broke off and fell, striking the defendant in error, in consequence of which he fell upon the sidewalk, suffering severe injuries. The defendant in error himself describes what occurred as follows: "I commenced sawing until, I think, the pole—as near as I can remember, I think the pole was about half off, and I felt it coming. It did not crack, or nothing more. It commenced coming towards me. I was up there on the pole, with my right hand over here (indicating), and my left hand about three inches above. I felt it coming, and I threw my hand down to catch on the lower piece of the pole. Just got a small hold there, when that other piece struck me. I grabbed the piece that had broken off, and fell backwards. It was over me until I turned over. I can remember turning over. I had hold of the pole something like that (indicating), and I shoved the pole away from me. That is as far as I can remember." The defendant's left leg was so broken and crushed by the fall that amputation was rendered necessary, and other serious injuries were suffered. There was evidence in the case tending to show that work or experience as a lineman during a period of 6 to 12 months was necessary to reasonably qualify such lineman for the dangerous work of climbing and sawing down poles by sections, like the work in which defendant in error was engaged at the time of the injury. There was also evidence tending to show that the pole on which he was at work had been standing in position and in use for about 18 years, and that the life of a pole like it, or the time during which it would remain sound and safe, was from 12 to 20 years. It was what is called a white cedar pole. There was no system of inspection of the poles on the particular line of which this pole was a part, and the record fails to disclose any rule promulgated or custom adopted by which it was the duty of defendant in error, or any other particular person, to make inspection; nor is any contract provision, direction, or instruction in that regard shown.

---

[1] Risks assumed by servant, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

[2] Conformity to practice in state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.

During the early part of the year 1896 the defendant in error had worked about 60 days, at irregular intervals, in the construction of a telegraph line on a railroad called the "Lima Northern," and during about 6 or 8 days of that time had done the work of climbing poles and stringing or tying wires, or assisted in such work; but the remainder of the time was engaged in what is called "ground work," such as carrying poles, setting them in the ground, and other work, which did not require climbing the poles for any purpose. He commenced work for the plaintiff in error on the 1st day of August, 1896, and his injury was sustained on the 12th day of the same month. Such work as he did while in the service of plaintiff in error, before the injury, consisted in ground work, until in the afternoon of the 11th day of August. What took place then and on the morning of the accident was stated by the defendant in error, and may be given just as found in the record, as follows: "Q. Let me call your attention to the evening of the 11th of August. Did you have an interview with the foreman of that company on that evening? A. While we were at work? Q. Yes. A. Yes, sir. Q. Under whom were you working at that time? A. W. A. Shadd. Q. What was his position? A. Foreman. Q. Was there any one else who had authority over you besides Shadd? A. Yes, sir. Q. Who was that? A. Mr. Miles. Q. What was his position? A. Assistant foreman. Q. What did these foremen usually do while you were working with them? What orders did they give? What did they do? A. They told us what we were to do, and we did that usually. Q. Who engaged you to work for the Western Union Telegraph Company? A. Mr. Miles. Q. Well, now, you can go on and state what Shadd told you that evening of the 11th of August. A. We were working in the city. I do not know what street we were on. He said to the gang, 'Boys, we will go over and take down the rest of these poles.' He named the street, and we started over. On the road over— We did not have any ax. I asked Mr. Shadd how we were going to take them down. He said, 'We will cut them from the top.' We went on over, and come to the first pole. He told Jim Lang,—I think his name was Jim,—'You and Burgess take this pole.' Q. That was the evening before? A. That was the afternoon of the 11th. I said, 'Mr. Shadd, I never did any of this kind of work, sawing down poles.' He said, 'You can take the poles off of the rope for Jim.' And Jim started up the pole. On the way up—it was a step pole—he caught his saw on the step, and broke it. Q. What do you mean by a step pole? A. That pole has iron steps driven in the side of it, to make steps—to make a ladder. Q. Climbers? A. Yes, sir. He broke his saw when he went on it, then he came down, and told me to saw until he went down to the— Q. Who told you to go up the pole? A. Jim Lang. Q. A man who was working with you? A. Yes, sir. Mr. Scribner: This is to show what experience he had. This was not the time he was hurt. This was the evening before he was hurt. I want to show what experience he had. The Court: I do not hear any objection. Mr. Newbegin: I object to this line of testimony. Mr. Scribner: I want to show simply that this was all the experience he had. Q. Did you ever saw a pole down before that? A. I sawed some on a pole. I did not take any pieces down. Q. You may state to the court what occurred the next day. A. Well, the next morning we got ready to go to work, and Shadd said to Mr. Henderson and me, 'You will go over on that terminal pole, and change the iron.' Shadd had put it on the day before, and put it on wrong. He said, 'You will go over and change that, and come over where we are working.' We did so. I should judge it was about half-past ten in the morning when I got there,—got over where they were at work. The gang was working on that street. I think it is St. Clair street. They were taking down wires and taking off cross-arms. We come up to where they were. Shadd says to Mr. Henderson, he says, 'Red, you and Burgess go to sawing poles.' I asked him if I was to take the poles off the ropes for Mr. Henderson. He said, 'No, you take this pole, and Red will take the other one.' Q. What did you do then? A. I picked up a handline and handsaw that was laying on the sidewalk and proceeded to climb the pole. Q. At the time you started up the pole, where was Mr. Shadd? A. When he had told me to take this pole, he had started uptown. Q. Where was Mr. Miles at that time? A. Mr. Miles was, I should judge, about 60 feet out in the street. Q. Did he see you go up the pole? A. Yes, sir. Q. Go

ahead, and state what you did. A. Went up the pole there, tied our hand line on the pole above where I intended to saw it. There was a bracket there. I fastened the end of the rope on the bracket. I started my sawing on the pole right over the bracket. I put the rope over the bracket to keep it out of the way of the saw. * * * Q. You may state what knowledge you had, if any, in regard to the condition of that pole, as to its being rotten or sound. A. None at all. Q. You may state what you knew, or what knowledge you had, as to the danger of sawing off a pole. (Objected to.) A. None at all. I had never seen any of that kind of work done until the day before. Never heard of it. (Exception taken to both the question and form of answer for reasons heretofore given.) Q. You may state what directions were given to you by Mr. Shadd, or Mr. Miles, or any one, as to how this work should be done. A. None at all. Q. You may state whether Mr. Shadd or Mr. Miles ever informed you that the pole was rotten, or what the dangers were in doing the work. (Question objected to by defendant. Objection overruled. Defendant excepts on ground that he took the risk of the work upon himself.) A. Nothing. Q. You may state what instructions, if any, Mr. Shadd, or Mr. Miles, or any one gave you as to the manner in which you should do that work. A. They had never given me any. Q. You may state whether or not they directed you to make any tests of the pole to ascertain its condition. (Question objected to. Objection sustained.) The Court: Ask him what directions were given him. Q. You may state what, if any, directions were given to you in regard to testing the pole to ascertain its condition. (Objected to, and not answered.) Q. Now, you may state, if you know, what was the height of that pole from the ground; that is, from the point at which you fell. A. From where it broke, I would judge about forty feet. Q. About how much did you saw off? A. About four feet and a half. Q. From the top? A. Yes, sir. Q. Upon what did you fall? A. The sidewalk. Q. What kind of a sidewalk was it,—brick or stone? A. It was, I think, what they call a sandstone sidewalk. Q. Just describe the manner in which you sawed that off,—the direction in which you sawed. A. I was standing with my back to the building, standing on the pole with my back to the building, and was sawing with my right hand. Q. What were you holding on with? A. With my left hand. Q. With your feet braced on the pole? A. I was on the pole like this (indicating), sawing around here on this corner (indicating), had hold about like that where I was sawing here (indicating). Q. Opposite the middle of your body? A. Yes, sir. Q. You had to saw below your hand? A. My hand was above the cut. Q. You were holding on with your feet below the cut? A. Yes, sir. Q. Was there any steps on that pole? A. No, sir." The testimony thus given by the defendant in error is substantially uncontroverted. The foreman, Shadd, was examined as a witness. So far as he relates what occurred, he does not differ materially from the defendant in error, although he does not remember, or, if so, does not state, the conversation between him and the defendant in error so fully as the defendant in error does; but he does not contradict or deny what the defendant in error said. There was some evidence tending to show that the pole was internally decayed and unsound, although the weight of the evidence is to the effect that it was substantially sound.

In the petition negligence was charged in two respects, and recovery sought on both grounds. First, the plaintiff in error was charged with negligence in putting the defendant to the work in which he was at the time engaged, with knowledge that he was inexperienced in that particular kind of work; that it was attended with greater danger than the work in which he had theretofore been engaged, and that this was done without any warning of the increased dangers, and without any instructions reasonably calculated to enable him to do the new work in a safe and proper manner so as to guard himself against injury. Second, as a distinct ground of recovery it is alleged that the defendant in error was set at work upon a pole which was dangerous, decayed, and liable to break, the condition of which was known to plaintiff in error, or by proper inspection ought to have been known to the plaintiff in error in the exercise of that reasonable care for the safety of its servants, which, it is alleged, was one of the master's obligations. At the close of the whole of the evidence plaintiff in error moved the court to direct a verdict in

favor of the defendant, the motion being in the following language: "The defendant, by its attorneys, requests the court to instruct the jury to return a verdict for the defendant, for the reason stated that on the whole case the law required a verdict for the defendant." This request was declined, and exception taken. All questions in relation to the second ground of recovery were eliminated from the case by the court below in the instructions to the jury. The instruction in this respect was that the master was not liable on account of a latent defect like that of internal decay in the pole, and that the master was under no duty to the servant to make inspection of the pole at which he was put to work. The jury was told to disregard this aspect of the case. The court then submitted the case to the jury to determine, as a question of fact, whether the plaintiff in error was or was not reasonably qualified for the work at which he was put, and whether that work involved dangers and risks in excess of that which he had been previously accustomed to do, and, if so, whether or not the foreman, Shadd, knew that he was inexperienced in the work at which he placed him. In short, the case was allowed to go to the jury on the question of negligence alleged as the first ground of recovery, and the instructions to the jury in relation to that question were full and specific. The trial resulted in a verdict and judgment in favor of the defendant in error for $5,000, and thereupon the plaintiff in error sued out the writ of error on which the case is before us for review. Exceptions were taken to the ruling of the court in the admission and exclusion of evidence; to different portions of the court's instructions to the jury; to the refusal of the court to give certain special requests in charge; the denial of a request by plaintiff in error that the jury be permitted to take with them to their consultation room the written charge of the court; to the refusal of the court to arrest judgment upon the ground, to use the very language of counsel: "That upon the statement of the pleadings herein the said defendant is entitled to judgment in its favor;" and errors (27 in number) are assigned on these different grounds.

Henry & Robert Newbegin, for plaintiff in error.

Harvey Scribner and W. H. Handy, for defendant in error.

Before DAY and SEVERENS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

We do not deem it necessary to discuss in detail and separately each of the various errors assigned. We shall consider briefly only those chiefly relied on in the argument at bar, and which seem to us sufficiently serious to require separate and special treatment.

In regard to the seventeen errors assigned to the court's action in the admission and rejection of evidence, it is sufficient to say that in only two or three of these were the exceptions specific in stating the ground of the objection, and the assignments of error could not, for this reason, be sustained. Toplitz v. Hedden, 146 U. S. 252, 13 Sup. Ct. 70, 36 L. Ed. 961; Railroad Co. v. Hellenthal, 31 C. C. A. 414, 88 Fed. 116, and cases there cited.

Such of the objections as were sufficiently specific are, in our opinion, not well taken. Indeed, we do not regard any of the exceptions taken to the rulings in relation to the evidence as tenable, apart from the difficulty that they are not sufficiently specific to put the court in error in overruling the objections. In support of the error assigned on the ruling of the court in refusing to direct a verdict in favor of the defendant it is urged, first, that the foreman and defendant in error sustained to each other the relation of fellow servants, and that

there is no liability on the part of the master for an injury to the
defendant in error caused by negligence, in any respect, of his fellow
servant.   It is not to be doubted, and is conceded, that, as a general
proposition, the relation between the foreman and the servants at
work under his orders and directions are fellow servants, and the gen-
eral rule of nonliability of the master is not controverted.   Where,
however, the negligence of the foreman is in the failure to discharge
one of those positive duties which the master owes to the servant, and
which cannot be delegated, the rule of nonliability is inapplicable,
and the master is responsible for the foreman's failure to discharge
this positive duty.   The case in this respect is undistinguishable from
Felton v. Girardy, 43 C. C. A. 439, 104 Fed. 127; Railroad Co. v.
Miller, 43 C. C. A. 436, 104 Fed. 124, recently decided by this court.
It is sufficient to refer to those cases, where the subject will be found
discussed, and the distinction involved pointed out, and it is unneces-
sary to restate the doctrine for the purposes of this case.

   Much of the argument at bar and in the brief was and is devoted
to an effort to show that the defendant in error was guilty of such
contributory negligence as defeated his right to recover, if otherwise
made out.   The contention is that it was negligent in the servant to
climb the pole, without any inspection as to its soundness, a distance
of 40 feet, and take hold of it with one hand above the saw, and then
proceed to cut off the section in that position.   In answer to this we
remark that the record does not disclose that any question of con-
tributory negligence of the defendant in error was urged or presented
on the trial in the court below, unless the motion to direct a verdict
for defendant must be regarded as distinctly raising that point.   No
specific instruction was requested in that regard, and no distinct rul-
ing had, or exception taken or reserved.   Railroad Co. v. Ives, 144
U. S. 409, 12 Sup. Ct. 679, 36 L. Ed. 485; Columbus Const. Co. v.
Crane Co., 40 C. C. A. 35, 98 Fed. 946.   Under such circumstances it
will admit of serious doubt whether such question is presented for con-
sideration or review by this court.   Conceding, however, but not decid-
ing, that a general motion to direct a verdict upon the whole record,
without stating the specific grounds of the motion, is sufficient to
raise the question of contributory negligence, we conclude, on the evi-
dence disclosed in this record, that this was an issue of fact, which,
like the question of negligence, was proper for the consideration of the
jury.   It will appear from the statement of the case that there was
some evidence tending to show that the defendant in error was an in-
experienced servant, and was changed from the work to which he had
become accustomed, and set at work which involved greater danger,
without any warning or instruction as to the safest mode of doing the
new work.   Under such circumstances, and in this state of the case,
we think the question of contributory negligence was a question of
fact for the jury to determine.   In view of such a state of the case, if
the jury should find that the defendant in error was not sufficiently
experienced to enable him to do the new work, and that he was nei-
ther warned nor instructed as to the proper mode of doing the work,
we conclude that it could not be said as matter of law that the serv-
ant was guilty of contributory negligence in not making an inspec-

tion of the pole for himself, and in the particular method adopted of sawing off the section of the pole. It could not be said, upon the facts of this case, that defendant in error was guilty of negligence as matter of law if he supposed the pole was sound, and that he might safely do the work as it was done. If the pole was regarded, upon reasonable ground, as sound, it could not be said that the method of sawing, up to the time the section broke off and fell, was an obvious danger to an inexperienced servant without instruction or warning.

The exceptions to the court's instructions on which the nineteenth, twentieth, twenty-first, twenty-second, and twenty-third errors are assigned, only raised and sought to raise the same general objection as was presented by the motion to direct a verdict for the defendant. In support of these general assignments it is said:

"All of these propositions as charged by the court were erroneous, and misleading, to the jury. We have shown both from the admissions in the pleadings and the evidence that the plaintiff knew of the special risk of the work. We have further shown, and the court charged the jury, that it was the duty of the plaintiff to inspect the pole for himself to see whether it was a safe one for him to work at; or, on the other hand, if its unsafe condition was latent, that he took the risk upon himself."

In relation to these assignments we need only say that we think they relate to questions of fact, which were properly submitted to the jury for determination, and the point at issue is substantially the same as the general question involved in the motion to direct the verdict, and is disposed of in what was said in relation to that question and the cases cited.

The twenty-fourth assignment of error presents objection to the court's refusal to give in charge the following request, made by the plaintiff in error:

"When the plaintiff accepted the employment of the defendant as a lineman, he held himself out as competent to discharge all of its duties in the line of his work as such lineman, and cannot now be heard to complain on account of having received an injury while in the line of his duty."

This request was clearly unsound, and properly refused, as will appear by referring again to Railroad Co. v. Miller and Felton v. Girardy.

It is finally assigned as error (twenty-fifth assignment) that the court refused to permit the jury to take with them on their retirement the written charge, in accordance with section 5190 of the Code of Ohio, which provides:

"And all written charges and instructions shall be taken by the jurors in their retirement, and returned with their verdict into court, and shall remain on file with the papers in the case."

The contention is that under section 914 of the Revised Statutes of the United States this rule of practice prescribed for the state courts of Ohio was applicable to this court. It is settled, however, that a provision like that found in the Ohio Code of Practice does not control proceedings in the circuit courts of the United States sitting in that state, and the objection is consequently not well taken. St. Clair v. U. S., 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936; Nudd v. Burrows, 91 U. S. 439, 23 L. Ed. 286. See, also, Railroad Co. v. Horst,

93 U. S. 291, 23 L. Ed. 898; In re Chateaugay Ore & Iron Co., 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; City of Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224; Shepard v. Adams, 168 U. S. 618, 18 Sup. Ct. 214, 42 L. Ed. 602,—where this general subject will be found considered and the cases reviewed.

The twenty-sixth error assigned is to the court's denial of motion in arrest of judgment, and is clearly not tenable; and the twenty-seventh assignment only seeks to raise in different form the main question presented and necessarily involved in the consideration and disposition made of that question, and does not seem to require separate discussion.

What is thus said concludes such discussion as we think the various errors assigned require, with the result that we do not regard any of them as well taken. Judgment affirmed.