BRITTON v. CENTRAL UNION TELEPHONE CO.

(Circuit Court of Appeals. Sixth Circuit. June 29, 1904.)

No. 1,276.

1. MASTER AND SERVANT—INJURIES TO SERVANT—TELEPHONE POLES—APPLIANCES—SAFE PLACE TO WORK.

Where a telephone lineman was injured by the falling of a defective pole from which he was removing the wires prior to the demolition of the pole, such pole was an appliance only, and not a place to work which plaintiff's employer was required to make safe for him to work on.

2. SAME—INSPECTION.

Where defendant telephone company had not assumed the duty of independently inspecting and testing its telephone poles before they were climbed by linemen, and the only inspection required was such as an ordinarily skillful lineman could readily perform before undertaking to climb the pole, a lineman so employed assumed the risk incident to climbing such poles after making such examination and tests as his judgment would indicate was necessary.

3. SAME—WARNING.

Where a telephone lineman had been previously discharged by defendant for incapacity, and thereafter, on again applying for employment, defendant was informed that he had not sufficient experience to work as a lineman, by reason of which he was employed at other work for a time, and was then directed to do a lineman's work in removing wires from certain old poles, in which work he was injured by the falling of a pole, whether defendant was negligent in permitting him to do such

work, which involved the climbing of the poles, without warning him to make an inspection thereof, and as to the manner in which such inspection should be made, was for the jury.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

F. S. Monnett and Pugh & Pugh, for plaintiff in error.

L. G. Richardson and Stewart & Stewart, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge.   Plaintiff, a lineman in the service of the defendant telephone company, was injured by the breaking of a decayed telephone pole which he had climbed in the ordinary course of his duty.   He brought this action to recover damages, and upon the conclusion of his evidence the court instructed the jury to return a verdict for the telephone company.   This is the only error assigned.

The pole which fell was decayed below the ground, and was apparently sound above the ground.   Before climbing, plaintiff tested its strength by shaking, and then climbed up some five or six feet and again shook it.   No weakness being thus discovered, he climbed to the top, and while engaged in working with the wires the pole fell.   The plaintiff was one of a gang of men engaged in removing or transposing the wires from an old line of poles upon one side of a country road, along which the company's telephone line extended between two Ohio towns, to a line of new poles upon the opposite side of the same road. The old line of poles was being abandoned because the poles were old and needed replacement, and plaintiff knew this, and knew that as the wires were transposed the old poles were cut down.   Another gang was at the same time engaged in putting up the new poles.   This gang kept somewhat in advance of the wire gang.   Both gangs were under the charge of a foreman, but the foreman was not personally present when plaintiff was hurt, and gave no direction to plaintiff about climbing the pole which fell, and made no inspection of that or any of the poles to be climbed.

1. It is first insisted that the instruction to find for the defendant was erroneous, because the telephone company owed the duty of providing plaintiff with a safe place in which to do his work.   The pole is a mere appliance for the support of the wires.   To reach the wires, the lineman uses the pole as he might a ladder or a scaffolding.   It is therefore more in the nature of an appliance than a place.   In Chambers v. Am. Tin Plate Co., decided April 5, 1904, 129 Fed. 561, we held that a scaffold was an appliance, and not a place; and in Maxfield v. Graveson (decided at this session) 131 Fed. 841, we held that a derrick was also an appliance.

2. It is next urged that, considered as an appliance or a place, the duty of the defendant was to inspect and test the poles before requiring plaintiff to climb it.   But the evidence disclosed that the defendant did not assume the duty of having any independent inspection or testing of poles before they were climbed by linemen.   The practice and custom under which it conducted its operations made every lineman his own inspector, and linemen were required to make such inspection and testing

of poles before going on them as they should deem essential to their own safety in doing the work they assumed to do. The case in this respect differed from Cumberland Telephone Co. v. Bills (C. C. A.) 128 Fed. 272, where there was evidence tending to show that under the practice and usage of that company it was the duty of the foreman of linemen to test the safety of a pole before it was climbed by the linemen, and that the plaintiff in that case did not make such a test as he otherwise would because he relied upon the foreman doing his duty. We therefore held that, if the jury found that the Cumberland Telephone Company had assumed to make an independent inspection before requiring its linemen to climb any particular pole, that the neglect of that duty by the gang foreman, upon whom the company had imposed it, would be the neglect of the company, and not that of a fellow servant. But we see no reason why a lineman, in view of the peculiar character of his work, may not lawfully contract to do any inspecting or testing reasonably necessary to determine whether he can safely climb a particular pole for the purpose of adjusting, transposing, or placing new wires. His acceptance of service with knowledge of the way in which the company conducts this part of its business, whether that way be the safest way for him or not, would imply an assumption of the risks incident to that mode of carrying on its work. Linemen must, in the very nature of the occupation, be often required to work alone, or in association with another lineman, and it would seem quite impracticable and unreasonable to send one man as an inspector with another of equal fitness to test a pole before climbed by the latter. The case might be altogether different if skill of a kind not presumably required from a lineman in the usual course of his calling was necessary to apply the tests reasonably sufficient in such cases. The tests which the plaintiff's evidence shows to be customarily used are by shaking, by pushing against the pole by means of a long staff with a point at one end, and by throwing away the dirt next the surface at the base of the pole and examining by use of an axe or crowbar the soundness of the pole at that point. These tests are all simple, and quite within the range of the experience of a qualified lineman, as shown by the evidence in this case. The experience of any such lineman would advise him that the life of a pole varies with climate, soil, and character of the wood. The same experience would warn him of the danger of putting the strain incident to climbing and removing or adjusting wire upon a pole of uncertain age, for a pole may well stand under the support of wires extending from one pole to another which will not stand under the weight of a man with the tension of the wires removed. That he should be held to assume the risks incident to climbing after making such examination and tests as his own experience and judgment should indicate were necessary is not inconsistent with the fair implications arising from his acceptance of employment. This is the view indicated by the opinion of Judge Richards in Cumberland Tel. Co. v. Bills, cited above, and is supported by the cases cited by him of McIsaac v. Northampton Electric Co., 172 Mass. 89, 51 N. E. 524, 70 Am. St. Rep. 244, and McGorty v. The Southern New England Tel. Co., 69 Conn. 635, 38 Atl. 359, 61 Am. St. Rep. 62. To these we add Cumberland Tel. Co. v. Loomis, 87 Tenn. 504, 11 S. W. 356; Sias

v. Lighting Co. (Vt.) 50 Atl. 554. McGuire v. Bell Telephone Co., 167 N. Y. 208, 209, 212, 60 N. E. 433, 52 L. R. A. 437, is not in conflict. The evidence there showed an assumption of the duty of inspection, before climbing, by the company, and the opinion distinguishes the case from McIsaac v. Tel. Co., 172 Mass. 89, 51 N. E. 524, 70 Am. St. Rep. 244, upon that very ground. This is also true of W. U. Tel. Co. v. Tracy, 114 Fed. 282, 52 C. C. A. 168. The principle applicable in such cases is that by continuing in the service with knowledge of the manner in which that business is conducted the servant agrees that the dangers obviously incident to the discharge of his duties when he is expected to determine for himself the safety of a particular pole before climbing shall constitute a term of the contract of employment. This is the doctrine of assumption of risk as many times expounded by this and other courts. Narramore v. Cleveland Ry. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; Chesapeake & Ohio R. Co. v. Hennessey, 96 Fed. 713, 38 C. C. A. 307; Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188; Gibson v. The Erie Ry. Co., 63 N. Y. 449, 20 Am. Rep. 552; Hickey v. Taafe, 105 N. Y. 26, 12 N. E. 286; Hawk v. Penn. Ry. Co. (Pa.) 11 Atl. 459; Whelton v. Ry. Co., 172 Mass. 555, 52 N. E. 1072; Richards v. Rough, 53 Mich. 212, 18 N. W. 785; Hayden v. Smithville M. Co., 29 Conn. 548; Randall v. B. & O. R. R., 109 U. S. 478, 482, 3 Sup. Ct. 322, 27 L. Ed. 1003; Tuttle v. Milwaukee Ry., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298, 37 L. Ed. 150; Felton v. Girardy, 104 Fed. 127, 43 C. C. A. 439.

3. But it is urged that the plaintiff was an inexperienced lineman, and that the defendant company knew this, and did not instruct him as to the methods of inspecting or testing a pole before climbing, and did not furnish him with the tools adapted to make tests. The learned trial judge erred, as we think, in taking this question from the jury. The extent of the experience of this plaintiff in the matter of climbing poles, new or old, was, upon his testimony, quite limited. Whether it was sufficient to constitute him a competent lineman in all branches of his work was a matter left in some doubt by the testimony of certain alleged experts as to the time necessary to make a first-class lineman. The occupation of a lineman is evidently one attended with a considerable degree of risk, and these risks are accentuated if he be put to the business of dismantling an old line of telephone poles. The dangers incident are for the most part of an obvious kind, but the best way of minimizing them by determining the reasonable safety of a given pole for one whose duty it is to climb and detach the wires must be acquired by experience in and observation of such work, or by instruction. A qualified lineman may be presumed to know how to take care of himself. But the presumption does not hold true as to an inexperienced man. Was the plaintiff a man who had had the experience and observation needful to enable him to guard in the best way against the dangers of a decaying or weak pole under the strain of a man working among the wires at its top? If he applied for employment as a lineman, and was apparently mature and intelligent, the company might act safely upon the presumption that he was qualified for his work, and capable of exercising due care to guard against the dangers inci-

dent to his duties. In such case no duty to instruct would be imposed. But where facts are brought to the notice of the master showing the disqualifications of the servant to safely encounter dangers which the employer knows he will meet, and which he has reason to believe the servant, from inexperience or other cause, does not appreciate or know how to guard against, the duty of cautioning and instructing becomes a personal duty of the master. Louisville & Nashville R. Co. v. Miller, 43 C. C. A. 436, 104 Fed. 124; Felton v. Girardy, 43 C. C. A. 439, 104 Fed. 127; Burgess v. W. U. Tel. Co. (C. C.) 108 Fed. 26. But application for or representations of qualifications for the duties of a particular place will not excuse the master from cautioning and instructing a servant whom he knows, from inexperience or otherwise, to be in fact either ignorant of dangers known to the master or ignorant of the methods of guarding himself against such unknown dangers. In L. & N. R. Co. v. Miller, cited above, we said:

"It is illogical to say that a servant impliedly assumes the hazards and risks of an occupation which are known to the master, but which the master knows are unknown to the servant, unless the dangers are so obvious that even an inexperienced person could not fail to escape them by the exercise of ordinary care."

But it was in evidence in this case that the plaintiff had been in the employment of the defendant company as a lineman for some two weeks in the spring preceding the September when he was hurt, and that he had been discharged for incompetency by the foreman under whom he was then working. He says he complained to the manager that he had not been treated right in thus discharging him, and applied for another job, and that the manager said he would inquire into the grounds of his discharge, and might return upon another day. He did return, and was told to apply for work to one Whiting. He accordingly applied to Whiting, and this is what plaintiff says occurred: "Whiting asked me if I was a lineman. I says, 'No, sir, I am not a lineman; I haven't been working at line work long enough to call myself a lineman, but I can do some work.'" Upon this he was employed as a second-class lineman. The difference between a first-class and a second-class lineman is not defined. But it appears that this first employment was as a green hand—an apprentice learning the business. When Mr. Brennan, the manager, inquired as to why plaintiff had been discharged, he was told that it was because of his inexperience; "because we were afraid he would hurt himself or some one else." It was also in evidence that Mr. Whiting, one of the defendant company's officials of whom Mr. Brennan made inquiry, recommended his employment as an "instrument man; not as a lineman." The witness Whiting says: "I told him I thought he would do well enough if he put him inside somewhere, where he did not have so much climbing to do; that he was inexperienced for to do Columbus work." The result was that he was employed and first put on some inside work, and then to hauling cross-arms and distributing them, and then to digging holes and putting in the new poles. Two weeks before he was hurt he was changed over to the wire gang, and put to the dangerous work of dismantling an old line of poles of their wires. He says he was told nothing whatever of the dangers incident, and nothing of how to test poles before

climbing. He saw other linemen shaking the poles before going up, and he "followed suit." He was not told about examining the base of the pole below the ground, or the use of the pike staff, or furnished with tools to make either test. Under these facts we think the court should have put to the jury the question as to whether the circumstances did not raise the duty of cautioning and instructing plaintiff before putting him into the work of transferring wires from this dangerous line of poles.

For this reason the judgment is reversed, and a new trial will be awarded.