## GROSSCUPP v. CHICAGO & N. W. RY. CO.
### No. 2417.

District Court, D. Wyoming.
April 13, 1936.

William B. Cobb, of Casper, Wyo., for plaintiff.

R. R. Rose and Vincent Mulvaney, both of Casper, Wyo., for defendant.

KENNEDY, District Judge.

The above-entitled cause is before the court upon defendant's demurrer to plaintiff's amended petition. The demurrer sets up that the amended petition does not state facts sufficient to constitute a cause of action, with a motion to dismiss the petition upon the ground that it is there affirmatively shown that the defendant was not guilty of negligence. The issue has been presented by oral argument and memorandum briefs of counsel.

As the suit is based upon the alleged negligence of the defendant company, it will be necessary to examine the pertinent allegations of the petition. The plaintiff was employed by the defendant company in the capacity of a boilermaker and in the course of his employment was required to repair broken, leaky, and faulty pipes and flues in locomotives by going into the fire boxes to perform the work. The usual, safe, and customary manner of making such repairs to locomotives is to withdraw the locomotive from service, transport it to the engine house, draw the fire from the fire box, and permit it to cool before entry is made for the purpose of repair. Such work is ordinarily performed by the boilermaker with a mechanical hammer operated by compressed air. In October, 1931, the plaintiff was directed by the engine house foreman at Casper, Wyo., to go to Shoshoni for the purpose of repairing one of defendant's engines which had become disabled while transporting a train in intrastate commerce. Said repairing was

necessary at said time and place in order that the engine might be kept in service and continue with the work of handling said shipment which had been interrupted by the disabling of the engine. In order to repair said engine while away from the engine house, plaintiff was required to and did enter into the fire box while the engine still contained live steam in the flues. It was necessary to use the steam pressure in the engine for the purpose of running and operating an air pump to secure pressure with which to run the calking hammer which plaintiff was required to use in such repairs. The inside of the fire box at the time was exceedingly hot and because of such heat plaintiff was physically unable to remain more than from ten to fifteen minutes at a time. It was necessary for the plaintiff to seek the open air to cool off and recuperate after remaining in the fire box for short periods of time. During the calking, live steam continued to escape into the fire box, making it necessary for the plaintiff to use a torchlight in order to obtain sufficient light to pursue his work. It is then alleged that the place furnished to plaintiff for his work was unsafe and dangerous to his life and known to the defendant so to be, or by the exercise of ordinary care and caution the defendant should have known and appreciated the unsafe and dangerous condition, and that plaintiff was unaware of the unsafe condition of the place furnished him to work and of the serious consequences which might and did result to him by working in such unsafe and dangerous place. The direct acts of negligence alleged on the part of the defendant in substance are that it was negligent in requiring the plaintiff to perform such work in such unsafe and dangerous place, in neglecting to withdraw the locomotive from service and transport the same to its engine house where it might be cooled before the work was to be performed, and that the boiler flues, fire box, and appurtenances were not at the time in proper condition and reasonably safe to operate. It is then alleged that the injury resulting to the plaintiff was directly and proximately caused by the exposure to heat and sudden changes in temperature which brought about extreme pain and permanent impairment of his physical and mental faculties.

The matter is presented by counsel for defendant in their brief upon the theory that, because the petition alleges the necessity of the repair and the use of the steam pressure from the boiler in its performance, there is presented no allegation of negligence on the part of the defendant, but in effect inferentially a denial of such negligence. This construction would make the use of the word "necessary" determinative of the sufficiency of the petition. It is conceivable, however, that while perhaps the use of the word is unfortunate, it might be construed as indicative only of the defendant's conception of a requirement to keep the engine in service rather than to withdraw it and return it to the shops for repair in the ordinary custom.

■ Counsel for the plaintiff present the matter upon the theory of a state statute being applicable (the train being engaged in intrastate commerce), which statute purports to abolish the defense of assumed risk incident to the employment of a person engaged in the operation of a railroad when such risk arises by reason of the negligence of the employer or of any person in the service of such employer. Rev.St.Wyo.1931, § 96-203. Literally, the effect of the Wyoming statute is not before the court because of the fact that there has been no defense as yet interposed and therefore the matter of assumed risk as a defense is not presented. The doctrine of assumed risk, however, is an element for consideration with the pleadings in negligence cases, for the reason that an action for damages on account of injuries sustained will not lie where the party injured under the circumstances pleaded may be said to have assumed the risk in the employment out of which such injury arises. As this court views the question presented, the trial balance must be drawn upon the position of the plaintiff in this connection.

■ Undoubtedly the gist of the negligence charged is that the defendant failed to provide a safe place for the plaintiff to perform the work required of him. As to what may be said to be a safe place to work and furnishing of safe appliances and tools depends almost entirely upon the individual circumstances surrounding a transaction. Some work places and appliances are inherently dangerous and are known to be such by the persons who are familiar with them, or even to the common observer, and under such circumstances the rule is different than in those cases where the safety of a place or of appliances and tools is not known to the party in danger or to an observer. The former class of cases probably gave rise to the maxim known as volenti non fit injuria ("that to which a person assents is not esteemed in law an injury"),

and with this doctrine is necessarily involved the rule of assumption of risk, as exemplified by the language of the court in O'Maley v. South Boston Gas Light Co., 158 Mass. 135, 32 N.E. 1119, 1120, 47 L.R.A. 161: "The doctrine of assumption of risk of his employment by an employee has usually been considered from the point of view of a contract, express or implied, but, as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, volenti fit non injuria. One who, knowing and appreciating a danger, voluntarily assumes the risk of it, has no just cause of complaint against another, who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation, without a right to claim anything from the other."

In 39 C.J. 321 we find the following language: "Whether the master has exercised reasonable care in furnishing his servant reasonably safe instrumentalities and a place for work depends in some degree upon the maturity, intelligence, and discretion of the servant employed, and in the case of youthful employees he must exercise a degree of care which has regard for their youth and inexperience. But where a servant is of full age and ordinary intelligence, the rule that the master must exercise ordinary care to provide reasonably safe tools for his servants does not apply when the tools are of a simple nature in which defects can be readily observed."

In Gulf, C. & S. F. Ry. Co. v. Jackson, 65 F. 48, at page 50 (C.C.A. 8), the subject is discussed by Judge Thayer: "In the respect last mentioned, the duty of the master to provide for the safety of his servants is commensurate with his duty to provide safe tools, machinery, materials, and other appliances for the use of the servant. It sometimes happens that much skill, experience, and care is required in erecting structures of even a temporary character for the use of laborers and artisans; and in such cases it is more especially the duty of the master to take such precautions as are reasonably necessary to guard against possible defects in such structures, which may endanger the lives of his workmen, or subject them to unusual and unnecessary risks. [Citing cases]. While the foregoing doctrine is well founded in reason and authority, yet it is not a doctrine of universal application, nor one which can be invoked in all cases where an employee is injured by reason of some insecurity or defect in the place where he is required to work. It frequently happens that men are employed to tear down buildings or other structures, or to repair them, after they have become insecure, or it may be that the work undertaken by the employee is of a kind that is calculated to render the premises or place of performance, for the time being, to some extent insecure. In cases such as these the servant undoubtedly assumes the increased hazard growing out of the defective or insecure condition of the place where he is required to exercise his calling, and the doctrine above stated cannot be properly applied."

In Lake v. Shenango Furnace Co., 160 F. 887, at page 892 (C.C.A. 8), Judge Walter H. Sanborn says: "Counsel argue that the deceased did not assume the risk and danger of operating this machine with but one workman because his master did not warn him of them; but no duty rests on the master to warn a servant of risks and dangers that are so apparent that a person of his ability and experience in his station may reasonably be held to have known and appreciated them."

In Seaboard Air Line Ry. v. Horton, 233 U.S. 492, at page 504, 34 S.Ct. 635, 640, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas. 1915B, 475, Mr. Justice Pitney says: "Some employments are necessarily fraught with danger to the workman,—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not."

In Harrison v. L. E. Myers Construction Co., 42 F.(2d) 950, at page 952 (C.C.A.8), the court speaks on the subject as follows: "It goes without saying that it was the duty of the employer, the Myers Construction Company, to exercise ordinary care to furnish the plaintiff with a reasonably safe place in which to work, and the first question to be determined is whether or not there was any substantial evidence to show that it failed to exercise such care. This depends in some degree upon the maturity, intelligence, and discretion of the employee. Where the employee is youthful and inexperienced, or without knowledge or means of knowledge of the condition of the

premises, greater care or caution is required than where the employee is of full age, of ordinary intelligence, and acquainted with the condition of the premises."

A brief expression of the rule is found in Toledo, St. Louis & Western Railroad Co. v. Allen, 276 U.S. 165, on page 171, 48 S.Ct. 215, 217, 72 L.Ed. 513: "In any event plaintiff assumed the risk. He was familiar with the yard and the width of the space between the tracks and knew that cars were liable to be shunted without warning to him. The dangers were obvious and must have been fully known and appreciated by him."

In Yates v. Atlantic Ice & Coal Co., 76 F.(2d) 86, at page 87 (C.C.A. 5), Judge Foster speaking for the court says: "It is elementary that it is the nondelegable duty of the master to use reasonable care to furnish the servant with a reasonably safe place to work, sufficient and reasonably safe tools and appliances with which to do it, and to warn him of dangers incidental thereto. An employee assumes the risk that is obvious, of common knowledge to those engaged in the occupation and necessarily incident to the doing of the work, but he does not assume a risk arising from the employer's negligence or breach of duty of which he is not aware."

As to the heat conditions, the language of Judge McDermott of our own Circuit in a high pressure still case is pertinent to one angle of plaintiff's petition, as found in Grammer v. Mid-Continent Petroleum Corporation (C.C.A.) 71 F.(2d) 38, at page 42: "The work was carried on under most trying conditions. The temperatures in the stills ran from 150° to 250° F. The heat often produced nausea. * * * The risk of the heat was assumed in law and in fact, for Grammer knew the conditions when he applied for the job."

The case most nearly analogous to the pleaded facts in the case at bar, which we have been able to find among the federal authorities, is Felton v. Girardy, 104 F. 127 (C.C.A. 6). There the boilermaker's helper was directed by order of the general foreman to go into the fire box of a locomotive and remedy the leak. The fire had been drawn but the box was still very warm. In making the repair, the employee used a hammer instead of a wrench by means of which a plug was driven out and the helper lost his life. Plaintiff's suit was predicated upon the theory that the employee was merely a helper and that the work he was ordered to do was that of·an experienced boilermaker requiring a degree of skill which he did not have, and that he encountered great danger on account of the foreman having directed him to do the work without having cautioned him or instructed him in a proper manner. The case seems to have been decided upon the theory of the employee's lack of knowledge and experience in connection with the work which he was required to perform, and the language of the court seems to be appropriate to the subject here under discussion, as found on pages 129, 130 of 104 F.: "A servant impliedly assumes the risks and hazards incident to the service he contracts to render, and, in the absence of knowledge to the contrary, an employer may assume, as between the master and the servant, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty. But if the employment be one of a dangerous character, requiring skill and caution for its proper discharge with safety to the servant, and the master be aware of the dangers, and have reason to know that the servant is unaware of them, and that from his youthfulness, feebleness, incapacity, or inexperience does not appreciate them, the servant cannot, even with his own consent, be exposed to such dangers, unless he be cautioned and instructed sufficiently to enable him to comprehend them, and with proper care on his own part, do his work safely."

See, also, Louisville & N. R. Co. v. Miller, 104 F. 124 (C.C.A. 6); Darden v. Nashville, C. & St. L. R. Co., 71 F.(2d) 799 (C.C.A. 6).

■ Again briefly reviewing the amended petition in the light of the foregoing authorities, we observe that the plaintiff was employed in the capacity of a boilermaker, and in the course of his employment it became his duty to calk and repair broken, leaky, and faulty pipes and flues in locomotives, being frequently required to go into fire boxes of defendant's locomotives to perform his work. As an experienced boilermaker, he was certainly familiar, not only with all the various duties involved in such work, but with the hazards which accompanied it. The technic of his occupation required him to be familiar with the heat which emanates from a fire box when the fire is recently drawn and with the effect of steam maintained in the flues. He was an expert in the choice and manipulation of tools ordinarily maintained for the purpose of effecting repairs to boilers. He, better

than a foreman or superintendent, was capable of deciding when and under what conditions boilers might be repaired. In fact, that was the very reason he was employed by the railroad company as an expert. Even were there a showing here of threats on the part of a superior official, which there is not, it would not be persuasive in sustaining the amended petition, for as an expert boilermaker he knew best all the hazards and dangers surrounding repair work under a diversity of conditions. Such circumstances inherently involve the assumption of risk from which the plaintiff must have absolved himself by his pleading before a good cause of action is set up, and the burden here has not been discharged.

For the reasons stated, the demurrer to the amended petition will be sustained and an order may be entered to this effect and dismissing the amended petition at plaintiff's costs, reserving to him proper exceptions.