WRIGHT v. STANLEY.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

No. 1,063.

1. MASTER AND SERVANT—NECESSITY OF INSTRUCTIONS.
    Where an employer sets an employé at work at machinery with the operation of which the employé is not acquainted, and there is a safe way and an unsafe way, the employer, if he has reason to know that the employé is unskilled, is required to give him instructions for operating it in the way by which he will avoid injury.

2. SAME—DANGEROUS MACHINERY—ASSUMPTION OF RISK—EVIDENCE.
    While a 17 year old boy, working for the first time at a planing machine, was attempting to pull out the "chaser" from the rear, his foot slipped against the cylinder, which was obscured by a pile of chips and shavings, and was so mutilated that amputation became necessary. In an action against his employer for such injuries, evidence examined, and held for the jury whether he had assumed the risk.

3. SAME—DUTY TO INSTRUCT—INSTRUCTIONS.
    In an action for injuries received while working at a planing machine, instructions in regard to the duty of the defendant to instruct plaintiff in the use of the machine examined, and held not objectionable in that they led the jury to understand that defendant became the insurer of plaintiff's safety.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Lorenzo T. Durand, for plaintiff in error.

F. T. Cahill, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

¶ 1. Assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

See Master and Servant, vol. 34, Cent. Dig. § 314.

SEVERENS, Circuit Judge.   This was an action brought by Stanley, the plaintiff in the court below, to recover damages suffered by him from an injury which he received while at work on a planing machine in a mill of the defendant below, who is the plaintiff in error here, an injury which resulted in the loss of a foot.   The plaintiff was a boy 17 years old, who had been employed by the defendant some months before the accident to take care of a horse used about the premises.   After being employed in that work for a time, he was directed by his employer to report to the foreman of the mill after his morning's work was done, and occupy his time in service there.   Under this direction he had been for a short time occupied in various duties about the mill, though not upon the planing machine until the day of the accident; but he had been about the machine, and had seen this, and other machinery of a different kind, used in the mill, in operation.   On coming to the mill that day, he was directed by the foreman to run the machine,—that is to say, to deliver the boards into the machine to be planed,—but not further defining his duties.   Near the fore end of the machine were a pair of pressure rollers, one above and one below, between which the board was gripped and carried along to the planing cylinders, one of which was not far behind the rollers and planed the upper surface of the board, and the other about 12 inches from the rear end of the platform of the machine, and located in the bed thereof.   This latter cylinder planed the lower surface.   There were also pressure bars bearing on the upper surface of the board to hold it down to the work of the cylinder below, and a guide against which the board moved through the machine.   The under-running cylinder projected a few inches below the platform, and was run at the speed of 3,500 revolutions per minute.   In operating the machine it was necessary that one board should immediately follow another through the machine, otherwise the board in the machine would stop after passing the pressure rollers; so that when the last board of a given piece of work was put through the machine, it was necessary to follow it with a "chaser," or strip of board used only for that purpose.   The "chaser" itself would, therefore, have to be taken out before the machine could be readjusted for new work.   So far there seems to have been no dispute.

With reference to the other facts there was evidence tending to show that the directions of the manufacturers of the machine provided a method of extricating the "chaser" by certain manipulation of its parts, but that while the plaintiff had been in the mill it was usual for the men operating the machine to pull it out from the rear end by main strength, while the machine was in motion, by laying hold of the "chaser," and putting a foot against the rear end of the platform for advantage in the pulling; and that the plaintiff had seen upon several occasions the fore-end man go back and pull it out in this way, or assist the off-bearing man at that end in getting it out by such means. The under-running cylinder, though set with knives, revolved so rapidly when the machine was in operation that it could not be distinguished from a roller, though some portions of it were in sight to one standing at the rear of the machine.   The defendant gave the plaintiff no warning of any danger resulting from its presence, or spe-

cial directions for operating the machine. We have said there was evidence tending to prove these things. It is not to be disputed that other evidence was put into the case tending to refute some or all of the matters thus stated, and which, if we were weighing the facts, might persuade us to a different conclusion as to some of them. But this was the province of the jury, and not of the court, if, as we think was the case here, evidence was given, which, if credited, tended fairly to show such facts, notwithstanding they might have been disputed by evidence more persuasive with the court. The plaintiff, while employed on the machine as above stated, had occasion to run a "chaser" through it. It stopped in the machine, and it was necessary, as the plaintiff supposed, to get it out. Accordingly, he went around to the rear end of the machine, and, seizing the "chaser" with his hands, pressed one foot against the rear end of the platform, and tried to pull it out. The rear cylinder was obscured by a pile of chips and shavings, and he says he did not see it. His foot slipped, and went back under the platform into contact with the cylinder, and was so mutilated that amputation became necessary.

At the close of the evidence the defendant's counsel prayed an instruction to the jury that the plaintiff was not entitled to recover, for the reasons, as then stated: "That under the evidence in the case the plaintiff was guilty of contributory negligence. That the risk was an obvious risk. The plaintiff had an equal opportunity with the defendant to know and appreciate the danger, and that by bracing his foot against that end of the planer and pulling upon the chaser, as shown by the evidence, he was guilty of such contributory negligence as defeated his right to recover." This instruction was refused, and the defendant excepted. Although there are other exceptions, the principal controversy is upon the question whether this instruction should have been granted. We think the court correctly held that the case was such that it was required to submit it to the jury. Appeal is made to the rule as first stated by the supreme court in Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780, in which Mr. Justice Miller declared the "true principle to be that, if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury." But, gauged by this rule, there was some testimony bearing upon the facts which it was incumbent on the plaintiff to make out to support his action, which, if the jury thought it most worthy of credit, justified the verdict. It is a well-settled proposition that, when the employer sets his employé at new work in conditions of danger not understood or appreciated by the latter, the employer is bound to warn him of the peril. And if the work is to be done by machinery with the operation of which the employé is not acquainted, and there is a safe way and an unsafe way, the employer, if he has reason to know that the employé is unskilled, is required to give him instructions for operating it in the way by which he will avoid injury. This duty is emphasized where, as in this case, the employé is a mere youth; for the presumption of the lack of knowledge and skill on his part is all the greater. We have quite recently

had under review so many cases in which questions of this character have been involved and the rules applicable thereto have been explained and applied that we think it unnecessary to go into extended discussion of the subject. Ellsworth v. Metheney, 44 C. C. A. 484, 104 Fed. 120, 51 L. R. A. 389; Railway Co. v. Miller, 43 C. C. A. 436, 104 Fed. 124; Felton v. Girardy, 43 C. C. A. 439, 104 Fed. 127; Telegraph Co. v. Burgess, 47 C. C. A. 168, 108 Fed. 26.

What we have said has equal application to the questions relating to the assumption of risk by the plaintiff and his alleged contributory negligence. But we add that the plaintiff did not assume risks which, from his inexperience and lack of warning and the obscurity of the danger, he could not fairly be regarded as having contemplated. In the circumstances which we have recited, we think it was for the jury to determine whether or not the risk to which he was exposed was of the character which he was bound to assume.

Nearly all of the other matters discussed in his brief and in argument upon the hearing by counsel for the plaintiff in error consist of subordinate points involved in the question already considered as to whether the court should have taken the case from the jury, none of which requires independent consideration.

One other question remains. It is urged that the court, in its instructions to the jury, gave them to understand that the defendant became an absolute insurer of the plaintiff's safety. In order to see whether this objection is well founded, perhaps the best way will be to set forth the instructions which are supposed to have induced the wrong understanding on the part of the jury.

"That is, gentlemen, if Ebert [the foreman] set him at one end of this machine simply to feed in the boards and not to take out the chaser, then he cannot recover; but if Ebert set him to running this machine,—to do this planing,—and it was understood that the man who did the planing took out the chaser, as the plaintiff swears he saw Ebert and other operatives of this machine do, then you would be justified in finding, if you came to that conclusion, that when Ebert set him to putting the boards into this machine and running this planer that he was not only to feed in the boards, but to do the work of the operator of the machine, which would be, he says, to take out the chaser after the last board had been run through. You must find that from the evidence."

"And if you find that Ebert did set the plaintiff at work to run this planer, and it was his understanding that the plaintiff was not only to run the boards through, but the plaintiff was to run the last board through by means of the chaser, and then take the chaser out; and if you find that under all the facts and circumstances in the case it was the duty of Ebert to instruct the plaintiff that the chaser should be taken out by loosening the pressure bar, if you find that was the way in which the chaser was to be taken out when it was found to be fastened so that it required force,—then I instruct you, gentlemen, that you may find it was the duty of Mr. Ebert (if that was not apparent so that any one could see it of ordinary intelligence and the age of this young man) to instruct the young man that to take out the chaser it would be only necessary for him to loosen this pressure bar."

"Gentlemen, if he was put there for the purpose of feeding the boards through, and, after he got through, to take out the chaser, then you could find that it was negligence in Mr. Ebert in not instructing him how to take out the chaser by unscrewing this set screw and relieving it by removing the pressure bar."

"But it is for you to find, under all the circumstances of the case, whether or not it was negligence for Ebert not to instruct him to release this pressure bar, and thereby release this chaser."

These instructions are not, in our opinion, susceptible of the interpretation that the court led the jury to understand that the defendant became the insurer of the plaintiff's safety. We have looked into the charge of the court, which appears to be set forth in full in the bill of exceptions, and think the case was fairly and correctly submitted to the jury.

Finding no error, the judgment must be affirmed.