## FLICKNER ET AL *v*. LAMBERT.

[No. 5,166.    Filed May 9, 1905.    Rehearing denied October 4, 1905.    Transfer denied November 16, 1905.]

1. APPEAL AND ERROR. — *Briefs.* — *Waiver.* — An assignment of error not discussed in appellants' brief is waived.    p. 527.

2. TRIAL. — *Interrogatories to Jury.* — *When Controlling.* — The general verdict controls unless the answers to the interrogatories are in such conflict that they can not be reconciled in view of any evidence admissible under the issues.    p. 529.

3. SAME.—*Interrogatories to Jury.*—*Inconsistencies in Answers.* —Inconsistent answers to the interrogatories to the jury neutralize each other, and the general verdict prevails.    p. 529.

4. SAME. — *Answers to Interrogatories to Jury.* — *Evidence.* — Where plaintiff's evidence showed that defendants had never instructed him in the use of a dangerous machine, and an answer to one interrogatory to the jury showed that with ordinary care the plaintiff should have known such machine to be dangerous without "having his attention drawn to it or without warning or instructions," and another answer showed that "with proper instructions" plaintiff could have "avoided" his injuries, the presumption obtains in support of the general verdict that the jury intended to show that the former answer was qualified by the phrase "with proper instructions."    p. 530.

5. SAME. — *Answers to Interrogatories to Jury.* — *Evidence.* — Where plaintiff's evidence showed that the defendants had never instructed him in the use of a dangerous machine, defendants' foreman denying same, and an answer to one interrogatory to the jury asserted that the evidence showed that defendants cautioned plaintiff as to such machine, and another answer showed that "with proper instructions the injury which plaintiff received could have been avoided," such former answer means that the evidence showed that such foreman testified that he had cautioned plaintiff as to such machine.    p. 530.

6. SAME.—*Interrogatories to Jury.*—*Master and Servant.*—*Assumption of Risk.* — *Contributory Negligence.* — *Question for Jury.*—Where the interrogatories to the jury show that the plaintiff was ordered by his masters to work upon a different machine from that upon which he was employed to work; that no instructions were given to him as to the dangers of such work and that he received injuries while working thereon, though he might have seen that such work was dangerous, and

Flickner *v.* Lambert—36 Ind. App. 524.

might have realized such dangers, the court can not, as a matter of law, declare him guilty of contributory negligence, such question being for the jury. p. 530.

7. APPEAL AND ERROR.—*Attorneys Instructing Jury as to Interrogatories.—Briefs.—Waiver.*—Alleged error of the trial court in allowing plaintiff's attorney to instruct the jury how to answer interrogatories is waived where such instructions are not set out in appellants' brief nor a citation to the record thereof made. p. 531.

8. NEGLIGENCE.—*Master and Servant.—Fellow Servant.*—The master is not liable for the negligence of a fellow servant. p. 533.

9. MASTER AND SERVANT.—*Inexperience.—Instruction.*—It is the imperative duty of the master to instruct an inexperienced servant in reference to the use of dangerous machinery. p. 533.

10. SAME.—*Superintendents.—Delegation of Authority.—Scope of Employment.—Work Outside of.—Contributory Negligence.—Question for Jury.*—Where the general manager directed the plaintiff servant to "mind" a certain employe, and such employe required another employe to put plaintiff to work on a certain machine outside of the scope of his employment, and such manager saw plaintiff, without his being instructed, about to begin work on such machine, and plaintiff was injured in such work, the masters are liable in the absence of contributory negligence, which question was for the jury. p. 534.

11. TRIAL. — *Instructions. — Misleading Jury.* — An instruction which, though awkward, does not mislead the jury, is harmless. p. 535.

12. SAME.—*Master and Servant.—Delegation of Authority.—Instructions Considered Together.*—An instruction that if W. was defendants' foreman in a certain room in the absence of the superintendent who placed the employes at the work, and that if W. acted with authority from defendants or with their knowledge or consent, the defendants are liable for his negligence, is not erroneous where other instructions told the jury that, to render defendants liable, the evidence must show that W. had authority from defendants to set plaintiff to work where he was injured. p. 535.

13. EVIDENCE.—*Declarations of Masters' Agent and Servant.*—Where plaintiff was set to work outside of the scope of his employment by defendants' agent, and received an injury in such work, a conversation between such agent and the plaintiff is admissible in an action for damages for such injury. p. 535.

From Warrick Circuit Court; *E. M. Swan,* Judge.

Action by Arthur Lambert against Arthur L. Flickner and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Ireland & Reister,* for appellants.
*Spencer & Brill,* for appellee.

COMSTOCK, C. J.—Appellants were engaged as partners in the manufacture and sale of harness, collars, etc. While in their employ, appellee, who was plaintiff below, received injuries resulting in the loss of his right hand and part of his right arm. The complaint alleges that said injuries were due to the negligence of the appellants.

As filed, the complaint was in three paragraphs. A demurrer was sustained to the first. The second proceeds upon the theory that appellee was at the time of his injury, by reason of his youth and inexperience, wholly ignorant of the dangers incident to the use of the steam cutter upon which he was set to work by appellants; that it was the duty of appellants to instruct him how to operate said cutter; that they neglected this duty, and by reason thereof he received the injury for which he sues.

The third paragraph contains substantially the averments set out in the second paragraph, and alleges, in addition, that the cutter was operated in a basement of appellants' factory, which appellants carelessly and negligently failed to light; that they failed to maintain sufficient openings or windows therein to admit sufficient light by which appellee could work in safety; that the operation of the cutters caused very heavy dust to rise in said basement, and that the dust increased the darkness of said basement; that by reason of said darkness the hazard of operating said cutter was increased, etc.

The cause was put at issue by general denial. The jury returned a verdict for appellee for $1,500, and with the verdict, answers to interrogatories. Over appellants' mo-

tions for judgment on the answers to interrogatories notwithstanding the general verdict and for a new trial, the court rendered judgment in favor of appellee for the amount of the verdict.

The errors assigned. question the sufficiency of each of said paragraphs of complaint, the action of the court in overruling appellants' motion for judgment on the answers to interrogatories, and in overruling the motion for a new trial.

1.  No objections are pointed out to the complaint. The assignment of error is waived.

Did the court err in overruling appellants' motion for judgment on the answers to interrogatories? Appellee was a boy eighteen years of age, employed by appellants through their superintendent, Harry Keelor, to run a machine used to cut straw into lengths of —— feet or more, known and designated throughout the case as the "long straw cutter," or "hand cutter," and run by hand. Said Keelor at the time appellee was employed fully instructed him in the safe and proper manner in which such hand cutter should be operated. Appellee was not injured by operating the machine which he was employed to operate, but was hurt on a machine run by steam, and known as the "short straw cutter," or "Hocking Valley Cutter No. 11," or, as it was called by the appellee, "Ohio Valley feed cutter." In answer to interrogatories the jury finds specially that the plaintiff at the time of his injury was about eighteen years of age; that he was not engaged in running the hand machine at the time of his injury, but was running the short straw cutter, operated by steam; that he was ordered by James Barner to work on said short straw cutter; that said machine could not be stopped suddenly; that it was not necessary to use a paddle in feeding straw into said cutter, nor for the appellee to put his fingers at or near the rollers in said cutter. In answer to the following ques-

tion, "How near the rollers is one required to put his fingers to feed said cutter No. 11?" the jury answered, "We can not tell." The jury further finds from the evidence that the plaintiff knew, without any warning or instruction, that his hand would be cut if he should get it in the rollers or knives of said cutter; that on the morning of the injury plaintiff was putting his hand into said cutter No. 11, near the feed-rollers, and that Bradshaw cautioned him about it; that plaintiff knew, or should have known by the exercise of ordinary care, without having his attention drawn to it, or without warning or instruction, that it was dangerous to put his hand at or near the feed-rollers in said cutter No. 11; that with proper instruction the injury which plaintiff received could have been avoided by him if he had exercised ordinary vigilance. The cause of the injury to plaintiff was the failure to warn and instruct him, and insufficient light. The plaintiff knew, without any warning or instruction, that it was dangerous to put his hand against the rollers of the machine known as cutter No. 11. He knew without being told that the place where he was at work was dark. He was employed to run the machine known as the "hand cutter," used to cut long straw. The defendants, or their foreman, ordered the plaintiff to change from the hand machine used to cut long straw to the machine known as Hocking Valley Cutter No. 11. James Barner, through Webber's orders, told the plaintiff to change from the long straw cutter to cutter No. 11.

Appellants insist that the court erred in refusing judgment in their favor, because, as they claim, said answers show: (1) that appellee assumed the risks incurred; (2) that he was guilty of contributory negligence. If either of these claims can be maintained, the court erred in denying said motion. The general verdict finds against appellants upon both of said propositions.

Answers to interrogatories prevail over a general verdict only when they are in irreconcilable conflict therewith. This conflict must be apparent upon the face of the record beyond the possibility of being removed by any evidence legitimately admissible under the issues. *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, and cases cited. In answer to interrogatory eleven, the jury said that they believed from the evidence that the plaintiff knew, without any warning or instructions, that his hand or fingers would be cut off if he got them in the rollers or knives of said cutter No. 11; in answer to interrogatory twelve, that the evidence showed that Bradshaw, on the morning of the injury, cautioned the plaintiff against putting his hand into said cutter No. 11; in answer to interrogatory thirteen, that with ordinary care the plaintiff knew, or should have known, without having his attention drawn to it, or without warning or. instruction, that it was dangerous to put his hand at or near the feed-rollers of said cutter No. 11; in answer to interrogatory fourteen, that with proper instructions the injury which plaintiff received could have been avoided if he had exercised ordinary vigilance; in answer to interrogatory sixteen, that the plaintiff knew without any warning or instruction that it was dangerous to put his hands against the rollers of the machine known as cutter No. 11. In answer to interrogatory eighteen, they found that the injury to the plaintiff was due to the failure of the defendant to instruct the plaintiff, and the insufficient light; in answer to interrogatory twenty, that he knew without being told that the place where he was at work was dark.

There is an apparent ambiguity between the answers to interrogatories thirteen and fourteen. Inconsistent answers to interrogatories neutralize one another, and the finding of the general verdict prevails.

Appellee testified that he had never seen the knives or

the rollers in the machine; did not know how many knives there were, nor how many rollers; did not know that there were teeth on the rollers; he told Keelor, who employed him, that he knew nothing about machinery; that he was never instructed by any one how to run the machine; had never started nor stopped the machine; his only experience with it was for a brief time the Saturday before he was hurt; the room was dimly lighted, and the air so full of dust that it was necessary for those at work in the room to wear a wet sponge over the mouth and nostrils for protection in breathing. These are facts to be considered in determining whether the conflict alleged between the general verdict and the answers to interrogatories is irreconcilable. The answer to interrogatory thirteen clearly indicates, too, that the jury meant to say that the exercise of ordinary care and vigilance, following proper instructions, would have prevented the accident. The answer to interrogatory twelve manifestly means that Bradshaw testified that he cautioned the plaintiff. In considering these answers with a view to passing upon the alleged conflict, it is proper to note that appellee denied that he had been cautioned by any one.

The answers show also that appellee was employed to work upon a machine operated by hand, not upon the one by which he was injured, and he was instructed with reference thereto. He will not be held to have assumed the risks incident to the operation of another machine which he had not been employed to operate, and concerning which he had received no instructions. "The fact that appellee might, by the use of his eyesight, have seen that the work was dangerous, or that he, by the use of his reasoning faculties, might have realized and avoided the danger which he was incurring, is not sufficient, under the circumstances, to enable the court to say, as a matter of law, that appellee was guilty of con-

tributory negligence. This was a question for the jury to determine from all the facts and circumstances in the case." *Haynes, Spencer & Co.* v. *Erk* (1893), 6 Ind. App. 332, 336:

The first reason set out in the motion for a new trial is that the court erred in permitting John W. Spencer, attorney for the plaintiff, to instruct the jury in his argument as to what answers they should make to the interrogatories propounded to them. The statements are not set out, nor are we pointed to any part of the record where they may be found. Presumably the question was not saved.

7.

That the verdict of the jury is not sustained by sufficient evidence and is contrary to law are next in order in the reasons for a new trial.

The undisputed evidence shows that the appellee was employed by appellants to work in their factory on a straw cutter operated by hand, and instructed as to the manner of operating and working the same; that he was changed from such machine so operated by hand and put to work upon the one on which he received his injury, and which was operated by steam, and that while so operating said machine he received the injury for which he sues; that he was wholly inexperienced and without any knowledge as to machinery, up to the time of his employment by appellants, as appellants knew. There is evidence that he received no instructions or warning as to the dangers attending the operation of the steam cutter, and that he had no knowledge of the situation of the knives and rollers by which the straw was cut; that the knives and rollers were covered.

This steam cutter was operated not more than once or twice a week, and then only for a period of time lasting from one-half hour to one hour. Appellants did not give personal attention and supervision to the different floors of their factory and persons employed therein, but delegated

that authority to different agents. In the conduct of their business they had a foreman or boss on each floor of their factory. In addition to these floor foremen or bosses, one Harry Keelor had general charge of the machine men on the floors of the entire building. Keelor was not in the cellar more than half of the time, and he had no particular work to do in the cellar except to boss the boys and look after the machines there employed. James Barner, who was in the employ of these appellants in the basement of the factory, was running a machine known as the "rimmer." The steam cutter was also situated in the basement, and it was the duty of said Barner; when it became necessary to cut short straw, or run this steam cutter, to stop his work at the rimmer and feed the straw into this cutter. It required the assistance of two boys when this steam cutter was operated and fed by said Barner. There being no boys in the basement except the one operating the hand cutter, which was this appellee, notice would be sent to one of the upper floors for the additional boy. At the time this steam cutter was being operated the duties of these boys in assisting said Barner were for one to throw the straw into the hopper of the steam cutter while Barner fed it into the machine, and the other to remove the short straw coming from this machine.

It appears from evidence that Barner was behind with his work on the rimmer, and, for the purpose of making up his lost time, he directed appellee and two other boys, Albert Deitrick and Frank Bradshaw, to cut short straw, which was done by the appellee and boys named. There was evidence that short straw was to be cut when it was needed in the business, and this without reference to the presence of Keelor. Keelor testified he knew they would cut short straw the morning of appellee's injury, and he knew that Webber had been in the habit of calling boys down stairs and setting them to work on the hand cutter ever since he had been there, about five years. He

testified he had the privilege of doing it. Knowing this, Keelor left the establishment of the appellants. Appellee had been told by Keelor to mind Webber when he (Keelor) was away.

The nature of the work required those who worked about the steam cutter to wear a wet sponge over their mouths and nostrils to prevent the dust that arose from the same from stifling them. The place in which appellee was required to stand was so narrow that he had barely room to stand between the machine and the belt that run the same at his back. The place was insufficiently lighted. Webber told Barner to put some one to cutting short straw. Webber knew Barner was behind with his work. Barner required appellee to feed the machine. Webber said: "Send some one down to cut short straw." He said he wanted more boys to cut short straw. While the machine was running, and appellee was standing right where he stood when he fed it—one of the boys had gone for water— Keelor looked at appellee but did not say anything to him. He was not at that particular time feeding the machine. There is a little conflict in the evidence. Where it occurs it is passed upon by the jury. Appellee assumed no risk outside of the contract of his employment. *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151.

Appellants earnestly contend that if the injury to appellee was due to his inexperience and ignorance, and because of want of instructions, still the failure to instruct was the fault of a fellow servant, for which appellants are not liable. It is thoroughly settled in this State that the master is not liable for the injury of an employe occasioned by the negligence of a fellow servant. It does not necessarily follow that the appellants are not liable upon the facts presented by the record. It is the duty of the master properly to instruct a young and inexperienced servant when put to work with dangerous machinery. There is no escape from this duty

but by its discharge. The name or rank of the person to whom this duty is assigned is not material. His negligence is the negligence of the master. Keelor was 10. general manager. He was in charge of the room in which appellee worked. He had directed appellee to "mind" Philip Webber in his (Keelor's) absence. In the absence of Keelor, Webber directed appellee, through Barner, to work upon the machine by which he was injured. Keelor, without any attempt to instruct appellee, saw him just before he was injured, under circumstances from which the jury might infer that Keelor knew appellee was about to engage in running the machine.

Keelor was the representative of the appellants, and in the room in which appellee worked he could confer authority both directly and indirectly. According to the testimony of appellee · he conferred authority directly upon Webber. He indirectly conferred authority by knowingly allowing Webber to exercise authority and making no objection thereto. At least three persons were necessary properly to operate this machine. Upon the occasion of appellee's injury they were procured in the way customary in the factory, and in a way known to Keelor. Appellants' work was being done in the ordinary manner. Appellee was called and assigned to the machine to forward the master's work. *Patnode* v. *Warren Cotton Mills* (1892), 157 Mass. 283, 32 N. E. 161, 34 Am. St. 275, is a case in which the facts are very similar to those in this case, and the principle involved is the same. Under the facts disclosed by the record, the rights of appellee are not determined by those of an employe injured by the negligence of a fellow servant. *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680, is not in conflict with the Massachusetts case cited.

Whether the dangers of the work were extraordinary, and the employe had had sufficient opportunity to become familiar with them, or had been instructed by some one

other than appellants; whether the danger was open and obvious and assumed by appellee; whether, if he did not observe the danger, he ought to have done so, regarding his age and inexperience, and other kindred questions presented by the appellants are all passed upon by the jury.

It is claimed that in instruction six, given by the court of its own motion, the court separates the two elements of negligence alleged in such paragraph. The gist, or theory, of such instruction was contained in what it said in reference to the failure of appellant to instruct appellee. It could not have misled the jury.

Instruction eleven, complained of, reads as follows: "If the jury find from a preponderance of the evidence that he [meaning Webber] was the foreman and superintendent of the persons who worked in the basement, in the absence of Keelor, who had authority from the defendants to place the hands at work, and that he acted therein with authority from the defendants, or with their knowledge or consent, then his negligence, if any, while so acting, would be the negligence of the defendants." It is objected to this that it is erroneous because one may have authority to put men at work at a certain place but that authority would not clothe him with the duties of a common employer. This instruction should be read in connection with other instructions given, and especially the eight, ninth and tenth. The jury were repeatedly told that before they could find for the plaintiff, they must find that Webber had authority from the appellants to set appellee at work at the steam cutter.

Instruction twenty-one, objected to, was fairly warranted by the evidence and the complaint.

It is claimed that the court erred in permitting Barner and the appellee to testify to what each said to the other upon the occasion of appellee's being put to work with the steam cutter in the absence of appellants or any authorized agent. The evidence was prop-

erly admitted upon the theory that Barner was the instrument and mouthpiece of the appellants, which theory was fairly supported by the evidence.

The complaint is framed upon the theory that appellee, young, ignorant and inexperienced, was put to work upon a dangerous machine without any instruction, and for want of such instruction, without fault of his, he was injured. The cause was fairly tried upon this theory, and we find no error for which the judgment should be reversed.

Affirmed.