CANNON, Respondent, v. SOUTH DAK. CENT. RY. CO., Appellant.

(137 N. W. 347.)

1. **Master and Servant—Negligence—Safe Appliances—"Reasonably Safe."**

A railroad company, though entitled to equip its engines with such appliances as it sees fit, must use reasonable care

to furnish its servant safe appliances and to keep them in good condition; he is not bound to use the newest and best appliances, but only those of ordinary character and reasonable safety; "reasonably safe" means safe according to usages and habits and ordinary risks of the business.‐

2. **Master and Servant — Negligence — Defective Appliances — Evidence.**

Where in an action for injuries to a common laborer who worked more or less as a switchman, for negligence in not having switch engine and tender equipped with footboard. stirrup or step, testimony of an experienced engineer as to how the engine in question was fitted out in those respects, and as to how such engines were usually constructed and as to appliances ordinarily adopted on such engines, was admissible as bearing upon question of negligence.

3. **Master and Servant — Injury — Negligence — Warning to Inexperienced Servant—Evidence of Inexperience.**

The foreman of a railway switchyard should instruct an inexperienced employee as to the work and give warning of dangers likely to arise, and failure to do so is evidence of negligence; the evidence in this case is sufficient to show such known inexperience as to require such instruction and warning.

4. **Master and Servant—Master's Knowledge of Servant's Inexperience—Failure to Warn—Negligence.**

Where the evidence shows that a railroad had full knowledge of the youth, ignorance and inexperience of an employee as a switchman, but failed to warn him of his danger or instruct him as to his duties as switchman in getting on and off of cars and concerning his duties as switchman, it is guilty of actionable negligence, though he was casually warned of danger of going between cars and making couplings.

5. **Master and Servant — Negligence a Question for Jury — Conclusiveness of Verdict.**

The question whether defendant was negligent in not having footboards, steps, or stirrups of usual type on the engine tender, and as to whether a switchman employee was duly warned of his danger and properly instructed in his duties, were for the jury; and, the jury having found negligence in one or both these respects, based on sufficient evidence, the verdict will not be disturbed in absence of errors of law.

6. **Trial—Instructions—Evidential Basis of Instruction.**

There being no evidence upon a given subject, the trial court need not charge the jury that there is no such evidence.

7. **Master and Servant — Instructions — Knowledge of Dangerous Appliances.**

An instruction, in a suit for injuries to an employee, that an employee knew of the lack of certain appliances, and that

in law defendant was not required to provide such appliances, had knowledge of the want of them, was erroneous in not containing a qualification requiring the master to furnish servant with reasonably safe appliances for his work.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Sam Cannon, by Ali Hamway, his guardian, against the South Dakota Central Railway Company, for damages for injuries sustained while performing the duties of switchman. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Joe Kirby,* for Appellant.

An adult unacquainted with the risk of his employment may require instructions or warning as much as a minor.

Again, where the minor is of such tender years that he would not ordinarily observe and know the danger, then extra care must be exercised to instruct him the same as an adult of weaker mind and perceptive faculties than is the lot of an average being. White, Personal Injuries on R. R., Sec. 318; Dresser, Employer's Liability, Sec. 96-9; Third Elliott on R. R., Sec. 1296; Bailey, Master's Liability, p. 114; Stuart v. R. R. Co., 40 N. E. 181; De Graff v. R. R. Co., 76 N. Y. 131; Robinsk v. Lyman Mills, 174 Mass. 432-3; Buckley v. Mfg. Co., 21 N. E. (N. Y.) 717; McGinnis v. Canada Co., 13 N. W. (Mich.) 819; O'Keefe v. Thorn, 16 Atl. (Pa.) 737; Ciriack v. Woolen Co., 15 N. E. (Mass.) 579; Cohen v. Mfg. Co., 71 N. E. 948; Ruchinsky v. French, 168 Mass. 68-70; Bender v. Glucose Co., 61 Atl. 388; Pennsylvania v. Congdon, 33 N. E. (Ind.) 795.

When he accepted and continued at the work of switching, he adopted it as fully and completely as if it had been the work at which he had been originally placed. If the contrary were the rule of law it would seldom be safe to advance a man, no matter what his merits might be. 3 Elliott on R. R., Sec. 1304; Reed v. Stockmeyer, 74 Fed. ( C. C. A.) 186; 26 Cyc., 1218-21; Hathaway v. Milling Co., 103 N. W. (Mich.) 164.

In other words, when a party is employed for a certain line of work, if his master desires to place him at other work it is a

signal to him that his first line of work is exhausted and he can either accept the second or quit. That all the defendant did, as disclosed by the evidence, was in the line of his employment of which he assumed the risk. 1 White, Personal Injuries, Sec. 321; 3 Elliott on R. R., Sec. 1288; O'Neal v. Ry. Co., 31 N. E. 69; Dresser, Employer's Liability, Sec. 82; Yeager v. Ry. Co., 61 N. W. (Ia.) 215; Hatter v. Ry. Co., 13 Southern, 827; Songstad v. Ry. Co., 5 Dak. 517; Coombs v. Ry. Co., 30 N. E. (Mass.) 1140; Appel v. Ry. Co., 19 N. E. (N. Y.) 93; Detroit Co. v. Grable, 94 Fed. (C. C. A.) 73.

The company had a right to select its own mode for equipping its engines, and so long as the plaintiff was aware of this condition it is not for him to complain after he was injured. 3 Elliott on R. R., Sec. 1289, and cases cited; Mo. Pac. Ry. Co. v. Baxter, 60 N. W. (Neb.) 1044; Smith v. Ry. Co., 69 Mo. 32; Thompson v. Ry. Co., 71 N. W. 61.

Under what rule of evidence my opponent will ask you to hold the testimony of Yeager proper, I am sure I cannot guess. Certainly none yet discovered. I ask you to read the following: Roberts v. Threshing Machine Co., 8 S. D. 579; Bank v. North, 6 Dak. 136; Plymouth Co. Bank v. Gillman, 3 S. D. 170.

The effect of admitting of such hearsay evidence was clearly prejudicial to the defendant.

The second requested instruction (102-3), asked the court to tell the jury that the accusation against the defendant that the handhold on the tender was so high that the plaintiff had to jump to catch it was unproven and could not be by them considered. There was no evidence by the plaintiff to establish such a fact which he had charged in his complaint and which was then before the jury.

The third and fourth requested instructions (104-5) relevant to the fact that the defendant had a right to determine what kind of equipment it should use and was not obligated to the plaintiff to equip its engines with running board or steps, especially as the plaintiff had full knowledge of the condition of the equipment of the engine with which he was working. This request is taken from the opinion rendered by Judge Jenkins sitting in the Circuit

Court of Appeals, in the case of Reed v. Stockmeyer, 74 Fed. 186-9. I think the defendant was especially entitled to this in-struction in view of the testimony of Mr. Yeager which the court allowed over our objection.

The fifth requested instructions (106) related to the right, of the jury who had seen the plaintiff, applying their own judg-ment as to his ability to appreciate danger and take care of him-self. This was refused, but in place thereof the court said (123-4): "If apparently he (the plaintiff) had the requisite skill and knowledge to understand all the dangers incident to the employment, then he would not need instruction or warning." This instruction given by the court does not meet the require-ments of said fifth request. In fact, it cannot, even so far as it goes, be said to state the law correctly for the reason already dis-cussed under the head of "Assumption of Risk."

The sixth requested instruction (107-8) related to the as-sumption of risk by a minor. The law, as I have here requested it to be given, is an epitome of the discussion in this brief under the head of "Assumption of Risk by Minors" and is substantially as found in White's Personal Injuries on R. R., Section 318.

The seventh requested instruction (109) is the approved form to be given on the question of "Assumption of Risk." It is taken literally from Brickwood Sackett, Sec. 1444.

The eighth requested instruction (110) should be given to the effect that the changing of the plaintiff's position from cinder sifter and fire builder to switchman became a part of his ordi-nary duties. I have already discussed this question and I think was entitled to such instruction.

*Charles P. Bates, Riemer & Loffer,* and *Perrett F. Gault,* for Respondent.

The only specific objection made to Yeager's testimony was that "defendant has a right to equip its engines with such ap-pliances as they see fit, and the party working for it assumes the risk so long as they are obvious and open." We think this ob-jection is without merit and begs the question, because, as we shall hereinafter point out, it is for the jury to say whether, con-

sidering plaintiff's age and experience, he assumed the risk of defendant's defective equipment, whether obvious or not.

However, regardless of the sufficiency of the objection made, this evidence was clearly competent. While the employer is not bound to supply the best or safest appliances obtainable, the law does require him to furnish the servant reasonably safe appliances with which to work, and evidence is admissible in an action for personal injuries to show whether or not the master's machinery, appliances, ways and methods are such as are in ordinary and common use by others in the same business. Elliott on Railroads, § 1273-4, 26 Cyc. 1108; Stiller v. Bohn Mfg. Co., 82 N. W. 981 (Minn.); Shadford v. Ann Arbor Ry. Co., 69 N. W. 661 (Mich.); Jones v. Kansas City, etc., Ry. Co., 178 Mo. 528, 77 S. W. 890, 101 Am. St. 434; Brazil Block Coal Co. v. Gibson, 66 N. E. 882; 98 Am. St. 281; Schroeder v. C. & N. W. Ry. Co., 103 N. W. (Ia.) 985; Myers v. Hudson Iron Co., 150 Mass. 125, 15 Am. St. 176; Hosic v. C. R. I. & P. Ry. Co., 37 N. W. 963 (Ia.); Kirby v. C. R. I. & P. Ry. Co., 129 N. W. 963 (Ia.); Mo. Pacific Ry. v. Baxter, 60 N. W. 1045; Kearney Electric Light Co. v. Laughlin, 63 N. W. 941; Thompson v. Mo. Pac. Ry., 71 N. W. 61; Smith v. Ry., 69 Mo. 32; Martin v. California Central Railway Co., 29 Pac. 645; Russell v. M. & St. L. Ry., 20 N. W. 147 (Minn.); Magee v. Railroad Co., 78 Cal. 430, 21 Pac. 114.

Objection was made to Yeager's evidence and the receiving of the same is now urged as error, but it was clearly competent and properly admitted on the question of defendant's knowledge of plaintiff's inexperience. Alabama Steel Wire Co. v. Wrenn, 34 So. 970 (Ala.); Gammel-Statesman Pub. Co. v. Monfort, 81 S. W. 1029 (Tex.).

No attempt is made to question Swan's authority. Unquestionably his acts were the acts of the defendant company, and it is responsible therefor. Stephens v. Hannibal, etc., Ry. Co., 96 Mo. 207; Sullivan v. Hannibal, etc., Ry. Co., 107 Mo. 66.

The duty devolves upon the master employing a servant in a dangerous occupation, who from youth, inexperience, ignorance or want of general knowledge, may fail to appreciate the danger,.

to first instruct the servant and warn him so that he may compre-
hend the danger and do the work safely with proper care on his
part.   Jones v. Florence Min. Co., 28 N. W. 207 (Minn.) ; Union
Pacific Ry. Co. v. Fort, 84 U. S. 553; Davis v. St. Louis, etc.,
Ry., 7 L. R. A. 283 (Ark.) ; Walker v. Lake Shore & M. S. Ry.,
62 N. W. 1032 (Mich.) ; Chicago, etc., Brick Co., v. Reinneiger,
140 Ill. 334, 33 Am. St. 249; Ingerman v. Moore, 25 Am. St.
138; Olson v. Neb. Telephone Co., 127 N. W. 916 (Neb.) ; Gal-
veston, H. & S. A. Ry. v. Hughes, 54 S. W. 264 (Tex.) ; Texas
& S. F. Ry. v. Preacher, 59 S. W. 593 (Tex.) ; Gulf Coast &
S. F. Ry. v. Newman, 64 S. W. 790 (Tex.) Novak v. Nordberg
Mfg. Co., 124 N. W. 282 (Wis.) ; Louisville & N. Ry. v. Miller,
104 Fed. 124; Wright v. Stanley, 56 C. C. A. 234, 119 Fed. 330;
Lehto v. Atl. Mining Co., 116 N. W. 405 (Mich.) ; Flickner v.
Lambert, 74 N. E. 263 (Ind.) Jones v. Lake Shore Ry., 14 N. W.
551 (Mich.) ; W. A. Gains & Co. v. Johnson, 105 S. W. 381
(Ky.) ; Parrenin v. Crescent City Stockyard Co., 44 So. 990
(La.) ; Davis v. St. Louis, etc., Ry., 7 L. R. A. 283 (Ark.) ;
Walker v. Lake Shore & M. S. Ry., 62 N. W. 1032 (Mich.) ;
Chicago, etc., Brick Co. v. Reinneiger, 140 Ill. 334, 33 Am. St.
249; Ingerman v. Moore, 25 Am. St. 138; Olson v. Neb. Tele-
phone Co., 127 N. W. 916; Felton v. Girardy, 104 Fed. 127.

Plaintiff had the right to assume that the appliances furnished
him were safe, suitable and adapted to the service required.   Gal-
veston, H. & S. A. Ry. v. Garrett, 73 Tex. 262; Magee v. North
P. C. Ry., 78 Cal. 430; Mace v. H. A. Boedker & Co., 104 N. W.
475 (Ia.).

While an employe is generally held to have assumed the
ordinary risks of the service which are known or are apparent to
him, still mere knowledge of a risk or danger without full appre-
ciation and comprehension of it, is not conclusive against his
right to recover in the event of injury.   Frye v. Bath Gas Co.,
46 Atl. 804 (Me.) ; Fitzgerald v. Conn. River P. Co., 29 N. E.
464 (Mass.) ; Mayott v. Norcross, 52 Atl. 894 ( R. I.).

If an employe has knowledge of a defect, or is chargeable
with notice of it, because obvious, but is not aware of the danger
incident to and attending it, he is not precluded from recovering

damages incurred by reason of such defect. Chicago & E. I. Ry. v. Knapp, 52 N. E. 927 (Ill.); Nofsinger v. Goldman, 55 Pac. 425 (Cal.); Ill. Steel Co. v. Schymanowski, 44 N. E. 876 (Ill.) Ill. Steel Co. v. Ryska, 65 N. E. 734 (Ill.) Hitritz v. Brown, 180 Fed. 1019; Hartrick v. Hawes, 67 N. E. 13 (Ill.) Russel v. M. & St. L. Ry., 20 N. W. 147 (Minn.); Myhan v. Louisiana Elec. Co., 17 Am. St. 436; Christianson v. Northwestern Co., 85 N. W. 826 (Minn.); Wuotilla v. Duluth Lumber Co., 33 N. W. 551 (Minn.) Sullivan v. Hannibal, etc., Ry. 28 Am. St. 388; Davis v. St. Louis I. M. & S. Ry., 7 L. R. A. 283 (Ark.); Galveston, etc., Ry. v. Smith, 57 S. W. 999 (Tex.); Texas & P. Ry. v. Brick, 20 S. W. 511 (Tex.); Stiller v. Bohn Man. Co., 82 N. W. 981 (Minn.); Cook v. Omaha Railway, 24 N. W. 311; Kerker v. Bettendorf Metal Wheel Co., 118 N. W. 306 (Ia.); Texas & N. O. Ry. v. Plummer, 122 S. W. 942; Clemens v. Package Co., 117 N. W. 187 (Mich.); See, also, Allen v. Jakel, 73 N. W. 555 (Mich.) Flickner v. Lambert, 74 N. E. 263 (Ind.); Chopin v. Badger Paper Co., 53 N. W. 452 (Wis.); Waukousk v. Pulp Co., 118 N. W. 644 (Wis.); Gierczak v. N. W. Fuel Co., 125 N. W. 436 (Wis.); Hill v. South. Pacific Ry., 63 Pac. 814 (Utah); Martin v. Cal. Cent. Ry., 29 Pac. 645 (Cal.); Merrifield v. Gold Quartz Co., 76 Pac. 710 (Cal.); Magee v. Ry., 21 Pac. 114 (Cal.) Olmscheid v. Nelson-Tenny Co., 68 N. W. 605 (Minn.) Kirby v. Wheeler-Osgood Co., 85 Pac. 62 (Wash.).

The charge of the court, taken as a whole, fairly submitted the issues, and there was no error in refusing the several special instructions requested by defendant. Duffey v. Consolidated Block Coal Co., 124 N. W. 609 (Ia.); M. K. & T. Ry. Co. v. Jones, 80 S. W. 852 (Tex.).

CORSON, J. This is an appeal by the defendant from a judgment entered in favor of the plaintiff and from the order denying a new trial. The action was instituted by the plaintiff to recover damages for injuries sustained by him while performing the duties of switchman on the defendant's railroad. It is alleged in the complaint: That the plaintiff is a Syrian of the age of 19 years. "That on the 21st day of July, 1910, and several months

prior thereto, the plaintiff herein was in the employ of the said defendant * * * as a common laborer in and about its round-house and machine shop and the yard in connection therewith at the city of Sioux Falls, S. D. * * * That the plaintiff was, by the terms of his employment, under the immediate command, direction, and control, and subject to the orders, of one Charles Swan, who was the superintendent of the motive power of said South Dakota Central Railway Company, and who had the general charge of the said roundhouse, machine shop, and yard, and also of the engines and cars of defendant, and all switching of cars to be done in and about said yard. That on or about the 21st day of July, 1910, the said Charles Swan ordered and commanded the plaintiff herein to accompany the engineer in charge of defendant's engine No. 2, and assist in the switching of cars in defendant's said yard. That in order to obey his said command, and do as directed by said Swan, it was necessary for this plaintiff to act both as a switchman and brakeman, and the plaintiff then and there objected to the said command and order, on the ground that he was not employed to do that kind of work. * * * That thereupon the plaintiff did accompany said engineer and assist in said switching as directed by said Swan. That the said engine was in charge of an engineer at said time, but there was no fireman, switchman, or brakeman with the said engine. That on said 21st day of July, 1910, and while the plaintiff was performing the work in said yard that he had been ordered to perform by the said Swan, as aforesaid, and in the course of performing said work, it became necessary for the plaintiff to climb onto the tender attached to said engine No. 2 while the same was in motion, and he was directed by the engineer in charge of said engine so to do, and, while so attempting to climb onto the said tender, the left foot of plaintiff, through no fault of his, was caught under one of the wheels attached to said tender, and was cut, crushed, and injured to such an extent as to render it wholly useless and permantly crippled. That the plaintiff herein was not employed by the defendant company either as a brakeman or as a switchman, or to assist in switching cars, and that on said 21st day of July, 1910, when the said Swan ordered and commanded the

plaintiff to accompany said engine and assist in switching cars, as aforesaid, the plaintiff was inexperienced in that line of work, and did not understand the work, or the danger incident to the performance of the same, of which fact the defendant and its said superintendent had full knowledge; and that it was the duty of the defendant to instruct the plaintiff as to the proper manner of performing said work, and to warn the said plaintiff of the danger incident to the performance of the same; but that the defendant negligently ordered and commanded the plaintiff to perform said work without giving him any warning or instructions, and without any explanation of the danger incident thereto, and which might result therefrom to an unskilled workman. That the said defendant negligently failed to furnish the plaintiff a reasonably safe place to perform, and reasonably safe appliances wherewith to perform, the said work which the said defendant, through its superintendent, ordered and commanded the plaintiff to perform as aforesaid, in that the said defendant knowingly and willfully failed and omitted to have the said engine and tender properly fitted with appliances as a switch engine. That the handhold attached to said tender was placed so high that plaintiff was obliged to jump in order to catch hold of the same, and that said tender was not provided with any proper stirrup, step, or footboard or running board attached to said tender. That solely by reason of defendant's negligence, as aforesaid, the left foot of said plaintiff was seriously and permanently injured, and his body otherwise bruised and injured. * * * All to plaintiff's damage in the sum of $6,170 * * *"—for which he demanded judgment. The answer is a general denial.

It is disclosed by the evidence that the plaintiff was employed by the defendant as an ordinary laborer in and about the roundhouse and had worked as such for some weeks before the accident; that, the regular switchman having resigned his position, the plaintiff was requested to assist the engineer in switching; that he performed these duties until the time he was injured, going out with the switch engine sometimes two or three times a day and some days not performing the duties of switchman. On the 21st day of July, while performing such duties as switchman,

he received the injury complained of, and he describes the man-- ner in which it occurred as follows: "I turned one switch and tried to jump on the water tank of the engine just as I saw every- body, and just as I had done before, jumped on. I caught hold of the handhold of the water tank of the engine with my right hand. I kept my right foot on top of the oil box and my left foot on top of the brake beam. When the engine came back over the frog, the wheels jerked, the top tipped over a little, and my foot, on top of the oil box, slipped off. * * * And my foot on. top of the brake beam slipped off, and the wheels caught my foot and cut my toes right off." It further appears that the plaintiff was born in Syria, and came to this country between 2 and 3 years before the accident, and that he was not quite 19 years of age; that prior to his being directed to assist in the switching he had never had any experience in that kind of em- ployment, and was directed to assist the engineer in the switching by reason of the fact that the regular switchman had left the employ of the company. Evidence was introduced on the part of the plaintiff, and admitted over the objections of the defendant, showing that switch engines were usually supplied with a foot- board both in front of the engine and at the rear of the tender or water tank, on which the switchman could stand with safety while the switch engine was in motion.

It is contended by the respondent, in support of the verdict and judgment, that "it is the defendant's duty to furnish appli- ances reasonably safe and suitable for the purpose for which used. The engine in question was defective in equipment." The plaintiff claims that, in not furnishing plaintiff a reasonably safe place and reasonably safe appliances with which to perform the duties as- signed to him, the defendant was negligent, inasmuch as there was no footboard or step attached to the engine or tender, and that said engine was not, therefore, properly equipped for switch- ing purposes. It is further contended by the respondent, in sup- port of the judgment of the court below, that "it is the master's duty to warn and instruct an ignorant, youthful and inexperienced servant, when employed in a dangerous occupation, and in the absence of such instruction the servant cannot be charged with. assumption of the risk."

It is contended by the appellant that, as the plaintiff had been for a year or more employed on and about railroads and was familiar with the methods of switching and with the engine and tender used in switching in this case, he assumed the risk, and, notwithstanding he was a minor and had been in the employ of the defendant as a common laborer in the yards of the defendant, he had sufficient knowledge of the business of switching to know and appreciate the danger of climbing on the tender as shown by his evidence, and that he not only assumed the risk attendant upon the service, but was guilty of contributory negligence in attempting to climb upon the tender while in motion in the manner described. It is also contended by the appellant that the court erred in admitting evidence tending to prove that switch engines usually contained footboards, steps, or stirrups, both in front of the engine and in the rear of the tender, on which a switchman can safely stand while the engine is in motion, and that for the error in admitting this evidence the judgment of the court below should be reversed. The appellant further contends that the court erred in refusing to give to the jury a number of instructions requested by the defendant, which instructions will be more fully referred to hereafter in this opinion.

It will thus be seen that the plaintiff bases his right to recover upon the ground that the switch engine and tender were not properly equipped with safety appliances by way of footboards, stirrup, or step; and that plaintiff being ignorant of the business of switching, the defendant failed through its officers to warn him of the danger incurred and to instruct him as to the manner in which he should perform the duties imposed upon him; and that the defendant bases its right to a reversal upon the ground that the plaintiff had assumed the risks attendant upon the performance of his duties as switchman, and had such knowledge of the duties as not to require special instructions as to the same from the master.

On the trial Peter Yeager, one of defendant's engineers at the time of the accident, was called as a witness, and testified as follows: "I have been in the railroad business 14 years, braked, switched, and run an engine. * * * Q. State to the jury how

that engine was fitted out with regard to footboards or steps or stirrups on the water tank. A. The water tank had a long hand-hold on the back end of it, and was equipped at one time with a footboard on the back end of it. This was taken off for some reason. * * * It was a passenger engine for a long time. This board was taken off the fall before, or the winter before, Mr. Cannon was hurt. There was not any step or stirrup on the water tank at the time of the accident. Q. I wish you to state to the jury how a switch engine is usually equipped, an engine used for switching, as regards footboards, steps, or stirrups. A. They have a foot board on the back end and the front end of the engine, and the pilot on the front end is taken off. Q. What is the purpose of these footboards? A. For switchmen to ride on. * * * Q. While you saw these different men, Krapo and these other men, you testified to, who helped do the swtiching, state the manner in which these men rode upon the engine. A. They rode just the same as most railroad men do, front or back end or in the cab. * * * No. 3 was the regular switch engine, but I did some with No. 2. No. 3 had steps on the back end of the tank, and No. 2 did not. * * * They would catch hold of the handhold and put their feet on top of the oil box and brake beam, and if there was a step they put it in the step. There was a step on No. 3. * * * The oil box cover would be about 18 to 20 inches from the rail. * * *" The objection of the defendant to this evidence is untenable.

[1] It is true, as stated by counsel, "the defendant had a right to equip their engines with such appliances as they see fit, and the party working for it assumes the risk so long as they are obvious and open." But this qualification is necessary: "A master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work, and to keep such appliances in good order and condition. He is not bound, however, to use the newest and best appliances, but performs his duty when he furnishes those of ordinary character and reasonable safety. In this connection the term 'reasonably safe' means safe according to the usages and habits and ordinary risks of the business." Headnote to Coin v. John M. Talge Lounge

Co., 222 Mo. 488, 121 S .W. 1, 25 L. R. A. (N. S.) 1179, 17 Ann. Cas. 888; Stiller v. Bohn Mfg. Co., 80 Minn. 1, 82 N. W. 981; Brazil Block Coal Co. v. Gibson, 160 Ind. 319, 66 N. E. 882, 98 Am. St. Rep. 281; Schroeder v. C. & N. W. Ry. Co., 128 Iowa, 365, 103 N. W. 985; Myers v. Hudson Iron Co., 150 Mass. 125, 22 N. E. 631, 15 Am. St. Rep. 176; Hosic v. C., R. I. & P. Ry. Co., 75 Iowa, 683, 37 N. W. 963, 9 Am. St. Rep. 518; Kirby v. C., R. I. & P. Ry. Co. (Iowa) 129 N. W. 963.

[2] In 26 Cyc. the rule applicable to such cases is stated, on page 1108, as follows: "While not conclusive on the question of negligence, evidence is generally admissible in an action for personal injuries to show whether or not the master's machinery, appliances, ways, and methods are such as are in ordinary and common use by others in the same business."

It is clear, therefore, that the court committed no error in permitting the witness to describe the manner in which the switch engines were usually constructed and as to the appliances ordinarily adopted on switch engines. This evidence being properly admitted, it was for the jury to determine from all the evidence whether or not the defendant was guilty of negligence in not having the usual appliances upon the engine such as footholds, steps, or stirrups which would furnish the switchman a safe place on which to stand while the engine was moving and which was easily accessible to the switchman.

[3] It is contended by the respondent, as before stated, that the defendant was guilty of negligence in not warning the plaintiff of the dangers incident to the business of switching and not instructing him as to the method or manner of performing his duties as such switchman. It is contended, however, by the appellant, that the plaintiff was of sufficient age and discretion to know and realize the dangers incident to the business of switching, and that he was sufficiently familiar with switching on railroads as not to require instruction on the part of the master.

We are inclined to take the view that the respondent is right in his contention, and that there was sufficient evidence of want of knowledge and experience to require the master to give such warning of the dangers attending the service of switchman

and to give him instruction upon that subject. The rule applicable to such cases may be stated as follows: On setting an inexperienced employe to work at a dangerous employment, it is the duty of the foreman in charge to instruct the employe as to the work and give warning of the dangers likely to arise, and a failure to do so is evidence of negligence. Cribb v. Kynoch, 2 K. B. 548, 11 Ann. Cas. 100; Jones v. Florence Min. Co., 66 Wis. 268, 28 N. W. 207, 57 Am. Rep. 269; Union Pac. Ry. Co. v. Fort, 84 U. S. 553, 21 L. Ed. 739; Davis v. St. Louis, etc., Ry., 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283; Walker v. Lake Shore & M. S. Ry., 104 Mich. 606, 62 N. W. 1032; Chicago, etc., Brink Co. v. Reinneiger, 140 Ill. 334, 29 N. E. 1106, 33 Am. St. Rep. 249; Ingerman v. Moore, 90 Cal. 410, 27 Pac. 306, 25 Am. St. Rep. 138; Olson v. Nebraska Tel. Co., 87 Neb. 593, 127 N. W. 916; G., H. & A. S. Ry. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264; T. & S. F. Ry. v. Preacher, (Tex. Civ. App.) 59 S. W. 593; G., C. & S. F. Ry. v. Newman, 27 Tex. Civ. App. 77, 64 S. W. 790; Novak v. Nordberg Mfg. Co., 141 Wis. 298, 124 N. W. 282; Louisville & N. Ry. v. Miller, 104 Fed. 124; 43 C. C. A. 436; Wright v. Stanley, 119 Fed. 330, 56 C. C. A. 234, 119 Fed. 330; Lehto v. Atl. Mining Co., 152 Mich. 412, 116 N. W. 405; Flickner v. Lambert, 36 Ind. App. 524, 74 N. E. 263; Jones v. Lake Shore Ry. 49 Mich. 573, 14 N. W. 551; W. A. Gains & Co. v. Johnson, 133 Ky. 507, 105 S. W. 381, 32 Ky. Law Rep. 58; Parrenin v. Crescent City Stockyard Co., 120 La. 75, 44 So. 990; Texas & Pac. Ry. v. Brick, 83 Tex. 598, 20 S. W. 511; Ark. Central Ry. v. Workman, 87 Ark. 471, 112 S. W. 1082; Arkansas Midland Ry. v. Worden, 90 Ark. 407, 119 S. W. 828; Felton v. Girardy, 104 Fed. 127, 43 C. C. A. 439; Wolski v. Knapp, Stout & Co., 90 Wis. 178, 63 N. W. 87.

In Arkansas Midland Railroad v. Worden, supra, the learned Supreme Court of Arkansas in discussing the question says: "But the rule is different as to a servant who, by reason of youth or inexperience in the particular work, does not fully realize and appreciate the danger. In that case it is the duty of the master to give proper instructions, and to warn the inexperienced servant of patent, as well as latent, dangers (Ford v. Bodcaw Lbr. Co., 73

Ark. 49, 83 S. W. 346); and, before the inexperienced servant can be presumed to have realized the danger and assumed the risk, it must be shown that he was instructed and warned of it."

[4] In the case at bar it is clear that the defendant had full knowledge of the plaintiff's youth, ignorance, and inexperience. Defendant through its master mechanic was fully aware of the plaintiff's inexperience as a switchman. The first time the plaintiff was ordered to do any switching he said to the master mechanic: "That is not my job. I never switched before." The witness Yeager testified as follows: "I had a conversation with Mr. Swan a week before Mr. Cannon was hurt with reference to Cannon's switching. * * * I called Swan and told him that I thought he ought not to send Sam around with those engines, and he wanted to know the reason. I told him that he had too much ambition and was too full of awkwardness, that he was all ambition and awkward, and I was afraid I might catch him. He said he didn't know what to do, that he was short of help, and let it go at that. After a while he would send the fireman to do it and didn't send Sam so much."

It is clear from the testimony of the plaintiff that he was never warned of his danger nor instructed as to the performance of his duties as such switchman, and his evidence as to the question is practically undisputed. It is true that Swan, the master machanic, warned him on one or two occasions of the danger of going in between the cars and making couplings; but it is clear that no instructions were given him as to the manner of getting on and off cars and the manner of performing his duties as such switchman.

[5] The question as to whether or not the defendant was guilty of negligence in not having footboards, steps, or stirrups on the tender and such as were usually found on switch engines, and as to whether or not he was properly warned of his danger and was properly instructed in his duties as switchman, were for the jury, and the jury having evidently found by their verdict that the defendant was guilty of negligence either in one or both of the respects indicated, based upon sufficient evidence, this court will not disturb the verdict and judgment entered thereon unless there were errors of law committed by the court.

[6] Counsel for the defendant presented to the court 17 special instructions, 5 of which were given by the court and 12 refused. The first instruction requested was substantially covered by the court in his charge to the jury. The second instruction requested was in effect that, no attempt having been made by the plaintiff to establish the fact that the handhold attached to said tender was placed so high that the plaintiff was obliged to jump in order to catch hold of the same, the jury should therefore eliminate that from the case. But there being no evidence upon that subject, it was not necessary for the court to call the attention of the jury to the fact that there was no evidence sustaining it.

[7] The third and fourth requested instructions are as follows: "(3) It appears from the plaintiff's evidence that he was aware of the fact for some considerable time prior to the accident that there was no footboard, running board, or step on said tender. Now, the law of this state is that the defendant company was under no obligation to place a step, footboard, or running board on its water tank or tender for the use of its employes, whose business it was to throw the switch or move cars, where such employes especially had notice or knowledge of the nonexistence of such appliances. (4) You are further instructed that a party carrying on a business has a right to conduct and equip his appliances in any lawful way that may to him seem best, although other ways may be less hazardous. In such case, if the servant knows the danger encountered upon the manner of prosecuting the work, or realizes and comprehends the mode of equipment with which he works, he assumes the risk of the more hazardous method." These instructions were both properly refused for the reason that they did not contain a qualification requiring the master to furnish his servants with reasonably safe appliances for the performance of their work. Duffey v. C. B. Coal Co., 147 Iowa, 225, 124 N. W. 609, 30 L. R. A. (N. S.) 1067; M., K. & T. Ry. Co. v. Jones, 35 Tex. Civ. App. 584, 80 S. W. 852.

The other instructions requested embodied the theory of the defendant that the plaintiff, though a minor, had sufficient knowledge and experience as to the duties of switchman as to preclude

the necessity on the part of the defendant of giving him special instructions as to the dangers attending switching and getting upon and off the engine when in motion; that he assumed the risk attendant upon the business of switching and was in fact guilty of contributory negligence; and that the defendant was not required to equip its switch engines with steps or footboards for the safety of its switchman. These were all questions of fact for the jury, and the court's charge to them upon the various subjects was very fair and impartial and stated the law applicable to the case very fully and clearly. No exceptions having been taken to the court's charge, we may reasonably conclude that it was satisfactory to the respective parties. We are of the opinion that the court committed no error in refusing to give the instructions requested by the defendant, as those not fully covered by the judge's charge omitted the required qualifications to render them unobjectionable.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.